## CHAN GUN *v.* THE UNITED STATES.

## .THE UNITED STATES *v.* CHAN GUN.

ALIENS; CHINESE EXCLUSION ACTS; DEPORTATION; ARREST; APPEAL; BAIL; STATUTORY CONSTRUCTION.

1. The admission of aliens within the United States, the conditions upon which they shall be permitted to remain, and the regulation of all proceedings for their deportation, are matters within the exclusive jurisdiction of the political departments of the Government; and the judiciary have no jurisdiction or power whatever in the proceedings save such as may be expressly conferred by act of Congress.

2. A justice of the Supreme Court of this District is a "United States judge" within the meaning of the Chinese exclusion acts, and hence has jurisdiction to grant orders for deportation as provided by those acts.

3. An arrest upon a formal complaint under oath *is not a necessary* prerequisite to the jurisdiction of a United States judge to grant an order for deportation under Section 6 of the act of Congress of November 3, 1893 (28 Stat. 7), providing that any Chinese laborer found within the country without having complied with the requirements of law for his identification, may be arrested by any of the officers of the United States named in the act and taken before a United States judge, who shall order his deportation.

4. The officers of the United States named in the Chinese exclusion acts have the power to demand of Chinese persons the production of the certificate required by law for their identifica-

tion, and upon their failure so to do, to take them before a judge or commissioner of the proper court, who is required to order deportation in the event of their failure to make affirmative proof of their right to remain in this country.

5. The provision of the general appropriation act of Congress of June 30, 1895, that where an alien is excluded from admission into this country, the decision of the appropriate immigration or custom officers, if adverse to the admission of said alien, shall be final unless reversed on appeal to the Secretary of the Treasury, has no application to the case of aliens unlawfully within the country, and as such arrested for deportation therefrom.

6. On appeal from a judgment discharging a writ of *habeas corpus* sued out by a Chinese person whose deportation from the United States has been ordered under the provisions of the act of Congress of November 3, 1893 (28 Stat. 7), the court is without power to admit such person to bail pending the appeal.

7. In such case, the right to bail is determinable, not by the rule applicable to ordinary cases under the writ of *habeas corpus,* but by Section 2 of said act of November 3, 1893, providing that pending the execution of the order of deportation such Chinese person shall remain in the custody of the United States marshal, and shall not be admitted to bail.

Nos. 607 and 606.  Submitted October 7, 1896.  Decided October 23, 1896.

HEARING on an appeal by petitioner from a judgment discharging a writ of *habeas corpus* sued out by a Chinese person ordered to be deported from the country; and by the United States from an order admitting the petitioner to bail pending the appeal. *Judgment affirmed; order reversed.*

The COURT in its opinion stated the case as follows:

Both of the foregoing appeals were taken in the same case.  Chan Gun appeals from the final judgment of the Supreme Court of the District of Columbia discharging a writ of *habeas corpus* that had been sued out by him.  The United States appeals from the order of said court admitting the said Chan Gun to bail pending his appeal to this court. It appears from the record that the said Chan Gun had been arrested in the District of Columbia by a deputy collector of internal revenue, without a warrant, as a Chinese laborer subject to deportation under the Chinese exclusion acts.  He

was brought before Hon. Charles C. Cole, one of the justices of the Supreme Court of the District of Columbia, and on June 16, 1896, the District Attorney of the United States filed a brief information alleging his arrest as a Chinese laborer unlawfully within the United States, and praying an order for his deportation.

Chan Gun appeared by attorney and moved to quash the information and for his discharge from arrest on the following grounds, substantially: The proceeding is not warranted by law; the court is without jurisdiction; the information does not comply with the law; the said Chan Gun is held without warrant of law; and the antecedent requirements of the law have not been complied with.

The motion was overruled, and on June 18, the following order was made:

" Upon consideration of the information filed by the attorney for the United States for the District of Columbia, and Kun, otherwise called Chan Kun, having been duly brought before me, and it appearing that the said Kun, otherwise called Chan Kun, is a Chinese person, and the said Kun, otherwise called Chan Kun, failing to offer any evidence in his behalf; now, therefore, it is this 18th day of June, A. D. 1896, adjudged, that the said Kun, otherwise called Chan Kun, is now unlawfully within the United States, and not entitled to remain within the same, and that he be removed from the United States to China."

On the same day, Chan Gun filed a petition for a writ of *habeas corpus*, which was granted by one of the justices of the court.

Petitioner alleged that " he was born in China, is now 48 years of age, and has been continuously a resident of the United States since the year 1859, except on one occasion in the year 1889, when he shipped as a cook and steward on an American registered boat at Philadelphia, Pennsylvania, bound on a voyage to Hong Kong, China, and while at the latter place, he visited his wife and child for a month or so,

and then immediately returned to this country." That he is a cook and steward and is not a laborer within the spirit and intent of the exclusion acts, etc. That he was arrested without warrant or complaint by a deputy collector of internal revenue and held in custody without commitment, etc. That said arrest and detention were illegal; and that the said deputy collector had no right or authority to make any decision under the laws as to petitioner's rights and privileges.

It was also alleged that an appeal has been taken from the arrest and decision of said deputy collector to the Secretary of the Treasury of the United States; pending which the justice of the Supreme Court of the District, before whom petitioner was brought, had no jurisdiction to make an order for his deportation.

The facts heretofore recited showing his arrest and production before the justice of the said court, and the complaint and order of deportation appear on the return made to the writ of *habeas corpus.* On June 22, 1896, a hearing was had and a judgment rendered discharging the writ and remanding the petitioner to custody. By the same order, petitioner was ordered " to be admitted to bail upon furnishing satisfactory security upon his appeal to the Court of Appeals in the sum of seven hundred and fifty dollars."

The United States at once made an application to this court for a writ of prohibition to prohibit the taking of bail, and also an application for the allowance of an appeal from the order admitting petitioner to bail pending his appeal. The writ of prohibition was refused, but the appeal was allowed by order of the Court of Appeals, June 24, 1896.

On July 1, petitioner's motion for a rehearing was overruled in the court below, and an order was made reducing the amount of his bail to $500. July 3, he gave a bond that was approved, and was ordered released from custody until the decision of his appeal by the Court of Appeals. The bond is not set out in the record, but is conceded to be

a mere appeal bond conditioned as in ordinary civil cases, under the rules regulating appeals.

*Mr. Edwin Forrest* and *Mr. John A. Clarke* for Chan Gun:

1. In order to authorize the court in the *habeas corpus* proceeding to sustain the jurisdiction of the justice in the criminal case, it was necessary that it should be found in the record or order of deportation that the petitioner was a person of Chinese descent who fell within the class of persons excluded from landing or remaining in this country under the laws of the United States. The order referred to had for its foundation the so-called information filed at the instance of the United States attorney, wherein it was alleged that " a deputy collector of internal revenue for the district of Maryland and the District of Columbia " had adjudged and determined that the petitioner was " a Chinese laborer unlawfully within the United States," and yet when the justice below made this adjudication and order of deportation he studiously refrained from following the alleged finding of the deputy collector suggested in the information, and merely held that he was " a Chinese person." Section 6 of the act of May 5, 1892, as amended by the act of November 3, 1893, is the law invoked by the representative of the United States as the warrant for his action. That section expressly repeals the original sixth section of the Act of May 5, 1892, and in terms only refers to Chinese laborers and defines what such a laborer is. Notwithstanding this amendatory statute, and the only class of Chinese subjects embraced within its terms, the justice below in the criminal case refused to hold or at least negatived the idea that the petitioner fell within its provisions by failing to have his order accord with the information, so-called, presented. To give the court jurisdiction in the criminal case the order and finding should have conformed to the charge or accusation made, and shown affirmatively that the petitioner was a laborer as defined by the act of November 3, 1893,

and failing in this the order of deportation was an adjudication beyond the authority of the court to pronounce and a matter without its jurisdiction.

2. The legislation of Congress upon the subject of the restriction of Chinese coming to this country is found in the acts of May 6, 1882 (22 Stat. 58); July 5, 1884 (23 Stat. 220); October 1, 1888 (25 Stat. 504); September 13, 1888 (25 Stat. 479); May 5, 1892 (27 Stat. 25); November 3, 1893 (28 Stat. 7); and August 18, 1894 (28 Stat. 390). The acts of May 6, 1882, and July 5, 1884, were by their terms to continue in force for ten years; and by the act of May 5, 1892, all laws then in force were " continued in force for a period of ten years from the passage of this act." It, however, nowhere appears in any of these acts, save the act of September 13, 1888, and the 13th section thereof, that Congress provided any method of procedure in enforcing the prohibitory features of its legislation.

The following authorities recognize the legality and binding force of the 13th section of the act of September 13, 1888, and indicate the method of procedure to be followed, should the court be of opinion, in view of the act of August 18, 1894, that the court had any jurisdiction to entertain the application, if legally and properly made. *Wong Wing* v. *U. S.*, 163 U. S. 228; *Law Ow Bew* v. *U. S.*, 144 U. S. 47; *U. S.* v. *Jim*, 47 Fed. Rep. 431; *In re Mah Wong Gee*, 47 Fed. Rep. 433; *U. S.* v. *Chong Sam*, 47 Fed. Rep. 878; *U. S.* v. *Gee Lee*, 50 Fed. Rep. 271; *U. S.* v. *Wong*, 57 Fed. Rep. 203; *In re Lintner*, 57 Fed. Rep. 587; *U. S.* v. *Loo Way*, 68 Fed. Rep. 475.

The remedy afforded by statute of September 13, 1888, must be followed. A. & E. Ency., Vol. 20, 974; *Wetmore* v. *Tracy*, 14 Wend. (N. Y.) 250; *Aff.* v. *Dreisbach*, 2 Rowle (Pa.) 287; *Long* v. *Scott*, 1 Blackf. (Ind.) 405; *Martin* v. *West*, 7 Ind. 657.

While a proceeding by *habeas corpus* is not in the strict legal sense a criminal case, yet it is the practice to resort to it to obtain the discharge of a person charged with a crime

or offence and detained by the order of a court assuming to act without jurisdiction of the person or the subject matter of controversy.

3. The act of August 18, 1894 (28 Stat. 390), among other things, provides: "In every case where an alien is excluded from admission into the United States under any law or treaty now existing, or hereafter made, the decision of the appropriate immigration or customs officers, if adverse to the admission of such alien, shall be final, unless reversed on appeal to the Secretary of the Treasury." This is the latest enactment on the subject, and the only person or officer authorized to make a decision is an immigration or customs officer, among which a deputy collector of internal revenue does not fall, and therefore the so-called adjudication or finding spoken of in the record was entirely without any legal justification or support in the statutes and null and void. The Supreme Court has passed upon the effect of this late act, and held that it was the sole and controlling factor in the disposition of these cases, and the only resort to which the United States was entitled. *Lem Moon Sing* v. *U. S.*, 158 U. S. 538. The petitioner duly noted an appeal as provided for in said law to the Secretary of the Treasury, where the same is now pending.

4. That the remedy by *habeas corpus* was the appropriate one, under the circumstances, and that he was entitled to his discharge thereunder, if his contention was correct, counsel refer to the following authorities: *Ex parte Parks*, 93 U. S. 18; *Ex parte Terry*, 128 U. S. 289; *In re Neilson*, 131 U. S. 176; *Ex parte Tyler*, 149 U. S. 164.

*Mr. Arthur A. Birney*, U. S. Attorney for the District of Columbia, and *Mr. C. H. Armes*, Assistant Attorney, for the United States:

1. The action of the learned judge in admitting the petitioner to bail pending his appeal was in direct violation of the last clauses of Section 2 of the act of November 3, 1893

(28 Stat. 7), and this violation is not the less apparent because it occurred in a proceeding in *habeas corpus* and not in the original proceeding. To hold otherwise would in effect nullify the statute. The attention of the court is also directed to the form of the bond for appeal as approved by the learned judge. It must be apparent that it gives no security for the return of the prisoner to custody, and hence is worthless to the Government. There is no authority for such form.

2. The judgment of deportation cannot be reviewed on a proceeding by *habeas corpus* unless the court was wholly without jurisdiction to pass such order. This principle would seem to be analogous to the principle decided in criminal cases where the objects of a writ of error or appeal have been sought by resort to the writ of *habeas corpus*. In such cases it has been said by the Supreme Court of the United States, in referring to convictions in the trial court, that " to review the decision of that court by means of the writ of *habeas corpus* would be to convert that writ into a mere writ of error, and to assume an appellate power which has never been conferred upon this court." *Ex parte Parks,* 93 U. S. 23. See also *In re Schneider,* 148 U. S. 157, 162 ; *Cross* v. *Burke,* 146 U. S. 84; *In re Cross,* 146 U. S. 277. The jurisdiction of the court below to pronounce the judgment and make the order of deportation would seem to be beyond question in view of the express enactment of the act of November 3, 1893, which expressly provides for the taking of the Chinaman " before a United States judge, whose duty it shall be to order that he be deported from the United States." The officer making the arrest in this case was authorized to make said arrest and take the accused before said judge. The right of such officer so to do has been determined in several cases in the Supreme Court of the United States. *Wong Wing* v. *U. S.,* 163 U. S. 228; *Fong Yue Ting* v. *U. S.,* 149 U. S. 698; *In re Tyler,* 149 U. S. 180.

Mr. Justice SHEPARD delivered the opinion of the Court:

1. The doctrine is thoroughly established that the admission of aliens within the United States, the conditions upon which they shall be permitted to remain, and the regulation of all proceedings for their deportation, when desired, are matters within the exclusive jurisdiction of the political departments of the Government. *Nishirmura Ekin* v. *United States,* 142 U. S. 651, 659; *Fong Yue Ting* v. *United States,* 149 U. S. 698, 730; *Lem Moon Sing* v. *United States,* 158 U. S. 538, 547; *Wong Wing* v. *United States,* 163 U. S. 236.

The execution of the laws for such purposes may be entrusted entirely to executive officers. And the judiciary have no jurisdiction or power whatever in the proceeding save such as may be expressly conferred by the acts of Congress. *Lem Moon Sing* v. *United States,* 158 U. S. 538, 545; *Wong Wing* v. *United States,* 163 U. S. 228, 235, 237.

When, however, the enactment goes beyond arrest and necessary detention for the purpose of deportation and undertakes also to punish the alien for his violation of the law, the judicial power will intervene and see that due provision shall have been made, to that extent, for a regular judicial trial as in all cases of crime. *Wong Wing* v. *United States,* 163 U. S. 237.

No question of that kind, however, is involved in this case, for the arrest and detention of the petitioner were for the sole purpose of his deportation.

This proceeding, as was said in Fong Yue Ting's case, "is in no proper sense a trial and sentence for a crime or offence. It is simply the ascertainment, by appropriate and lawful means, of the fact whether the conditions exist upon which Congress has enacted that an alien of this class may remain within the country. The order of deportation is not a punishment for crime. It is not a banishment in the sense in which that word is often applied to the expulsion of a citizen from his country by way of punishment.

It is but a method of enforcing the return to his own country of an alien who has not complied with the conditions upon the performance of which the government of the nation, acting within its constitutional authority and through the proper departments, has determined that his continuing to reside here shall depend. He has not, therefore, been deprived of life, liberty or property without due process of law; and the provisions of the Constitution securing the right of trial by jury, and prohibiting unreasonable searches and seizures and cruel and unusual punishments, have no application." 149 U. S. 730.

The justice of the Supreme Court of the District, who made the order, is without doubt "a United States Judge" within the meaning of the exclusion acts; and hence had jurisdiction to grant the orders for deportation as in said acts provided. But it is contended that he could only acquire jurisdiction through the formal arrest of the petitioner under a complaint made in writing as provided in Section 13 of the act of September 10, 1888, which contains the following clause:

"That any Chinese person or person of Chinese descent found unlawfully in the United States or its territories may be arrested upon a warrant issued upon a complaint under oath, filed by any party on behalf of the United States, by any justice, judge or commissioner of any United States court, returnable before any justice, judge or commissioner of a United States court, or before any United States court, and when convicted, upon a hearing, and found and adjudged to be one not lawfully entitled to be or remain in the United States, such person shall be removed from the United States to the country whence he came."

The authority for the arrest of the petitioner by the deputy collector of internal revenue, without complaint under oath, or warrant, is claimed under Section 6 of the act of November 3, 1893, which provides that any Chinese

laborer, who, without having complied with the requirements of the law for his identification, shall be found within the jurisdiction of the United States, etc., "may be arrested by any United States customs official, collector of internal revenue or his deputies, United States marshal or his deputies, and taken before a United States judge, whose duty it shall be to order that he be deported from the United States." 28 Stat. 7.

On behalf of the appellant it is contended, in the first place, that this section cannot apply to him because he has been adjudged to be a "Chinese person" and not a "Chinese laborer," to whom the same only applies; and, in the second place, that the arrest therein directed must be made as provided in Section 13 of the Act of 1888, aforesaid, and in no other other manner.

We cannot agree with counsel that arrest upon a formal complaint under oath is a necessary prerequisite to the authority of the judge to make the order of deportation.

Let it be conceded that the law contemplates an arrest only after complaint under oath shall have been made, and yet it does not follow that when an alien, unlawfully in the country, shall have been seized without warrant, by one of the officers named, the judge before whom he may be brought is wholly without power to order his deportation. There is nothing in any provision of the several acts to warrant such a conclusion.

Grant, also, that there may be a substantial distinction between the case of a "Chinese laborer" and that of a "Chinese person," not a laborer, and that a Chinese subject who shall have been arrested as a laborer should appear to be, not a laborer, within the definition of the act, but yet a Chinese person unlawfully within the country, would the judge nevertheless be without power to order his deportation? We cannot think so. Any other conclusion would violate the spirit of the several acts, if not their letter. As we have seen above, the proceeding is not a judicial one for

the punishment of a crime, but a mere executive process through which the unquestioned political power, in the case of aliens, is exercised.

The spirit of the laws (with the wisdom, policy or justice of which the judiciary department has nothing to do) is manifest in the several provisions that compel the order of deportation to be made, in all cases, unless the alien shall make proof of his compliance with all the conditions upon which his right to remain in the country depends. If a Chinese person, whether merchant or laborer, is arrested as unlawfully within the country, and, when brought before a United States judge for the necessary order of deportation, fails to produce his certificate or to make the proof required in lieu thereof, by the terms of the law his deportation must be ordered. The law is peremptory. See act of May 5, 1892, Sec. 3; act of November 3, 1893, Sec. 1.

Whilst the question as to the legal formality of the arrest, as made, is not necessarily involved, because of the conclusion that the jurisdiction of the judge did not depend thereon, we think it proper to say, nevertheless, that we see no reason why the arrest in all such cases may not be made by the proper officers without a warrant founded on a complaint under oath.

Since the beginning of legislation having in view the exclusion of Chinese persons from the United States many acts have been passed, some of which expressly, and others impliedly, amend those that have gone before, while, at the same time, introducing some new and independent provisions.

The result of this, in connection with the occasional reference to treaties with China, has been to create confusion in respect of the continuing force of certain provisions, as well as of their interpretation generally. For instance: The Secretary of the Treasury, who is specially charged by the "Geary Act" of May 5, 1892, to make such rules and regulations as may be necessary for the efficient execution of the

law, has regarded the act of September 13, 1888, upon the thirteenth section of which the appellant relies, as wholly inoperative, because "dependent on the ratification of a treaty with China which was never ratified." See Treasury Decisions. On the other hand, several of the Federal courts have held that the thirteenth section of that act, which also provides for an appeal from the decision of the commissioner, is in full force. *United States* v. *Jim,* 47 Fed. Rep. 431; *In re Mah Wong Gee,* 47 Fed. Rep. 433; *United States* v. *Chong Sam,* 47 Fed. Rep. 878; *United States* v. *Gee Lee,* 50 Fed. Rep. 271; *United States* v. *Wong,* 57 Fed. Rep. 203; *In re Lintner,* 57 Fed. Rep. 587. It is also in part recited, as if in force, in the opinion in *Wong Wing's Case,* 163 U. S. 228, though no ruling was made in respect thereof.

Conceding that the thirteenth section aforesaid is in full force and effect, it must be considered in connection with the previous laws also in force, together with those that have been since enacted. So considered, we think that a Chinese person may be arrested as provided therein; that any person having knowledge of a Chinese person who may be unlawfully in the country may make complaint under oath and cause him to be arrested; but it does not follow that the officers of the United States, specially charged with the execution of the exclusion acts, must pursue that course and no other.

The acts of 1882 and 1884 both provide that a Chinese person "found unlawfully within the country shall be removed," &c., after being brought before some justice, judge or commissioner of a court of the United States and found to be one not lawfully entitled to be and to remain in the United States. In neither act is there any provision for a complaint, or for regulating the mode of arrest for the hearing. The act of October 1, 1888, extended and made applicable to its provisions the powers conferred by the act of 1882 aforesaid, and contains no mention of the recent act of September 13, 1882. The "Geary Act" of May 5, 1892,

(Sec. 6), provides that if the alien shall be found to be within the jurisdiction without the required certificate, he "shall be deemed and adjudged to be unlawfully within the United States, and may be arrested (by certain designated officers) and taken before a United States judge, whose duty it shall be to order that he be deported," &c.

The same section, as amended by the act of November 3, 1893, contains substantially the same words. From these several provisions preceding and succeeding the act of 1888, we think it was the intention of Congress that the officers named should have the power to demand of Chinese persons the production of their certificates, and upon their failure to do so, to take them before a judge or commissioner of the proper court, who is required to order deportation in the event that they should fail to make affirmative proof of their right to remain in the country. This seems to have been the practice under said acts and to have received the indorsement of the Supreme Court of the United States. *Fong Yue Ting* v. *United States,* 149 U. S. 698, 702, 728, 743. In that case it was made to appear that at least one of the three appellants had been arrested "without any writ or warrant." Mr. Justice Gray, who delivered the opinion of the majority of the court in that noted case, after upholding the power of Congress to order the removal of aliens by executive officers "without judicial trial or examination," proceeded to say: "The effect of the provisions of Section 6 of the act of 1892 is that, if a Chinese laborer, after the opportunity afforded him to obtain a certificate of residence within a year, at a convenient place, and without cost, is found without such a certificate, he shall be so far presumed to be not entitled to remain within the United States that an officer of the customs, or a collector of internal revenue, or a marshal, or a deputy of either, may arrest him, not with a view to imprisonment or punishment, or to his immediate deportation without further inquiry, but in order to take him before a judge, for the purpose of a judicial hear-

ing and determination of the only facts which, under the acts of Congress, can have a material bearing upon the question whether he shall be sent out of the country, or be permitted to remain." Again, in describing the hearing, he says: "No formal complaint or pleadings are required, and the want of them does not affect the authority of the judge, or the validity of the statute" (p. 279).

2. The general appropriation act of June 30, 1895, contains the following provision: "In every case where an alien is excluded from admission into the United States under any law or treaty now existing or hereafter made, the decision of the appropriate immigration or customs officers, if adverse to the admission of said alien, shall be final, unless reversed on appeal to the Secretary of the Treasury."

The contention on behalf of the appellant is, that, having appealed to the Secretary from the decision of the revenue officer who arrested and detained him, the jurisdiction of the Secretary under the act aforesaid at once attached and became exclusive. We think it quite clear that the said provision was intended to apply to the case of aliens "excluded from admission" by the officers named, and to have no application whatever to those unlawfully within the country and as such arrested for deportation therefrom.

3. Considering now the cross appeal of the United States from the order releasing the appellant from custody upon the approval of his bond on appeal to this court, we are of the opinion that the order was erroneous. The right to bail in this case is not determinable by the rule applicable to ordinary cases under the writ of *habeas corpus*; but by the provision of Section 2 of the act of November 3, 1893, which reads as follows: "And pending the execution of such order (*i. e.*, of deportation) such Chinese person shall remain in the custody of the United States marshal, and shall not be admitted to bail." 28 Stat. 7.

The execution of the order was delayed by the appellant's

proceedings, and the statute, though harsh in its terms, necessarily governs the case. The order admitting to bail was therefore erroneous, and must be reversed.

The judgment discharging the writ of *habeas corpus* and remanding the appellant to custody must be affirmed, with costs; and it is so ordered.                    *Affirmed.*