### UNITED STATES v. WONG CHOW.

(Circuit Court of Appeals, Fifth Circuit.     April 16, 1901.)

#### No. 1,014.

CHINESE EXCLUSION ACT—FINALITY OF ACTION OF EXECUTIVE OFFICERS—POWER OF COURTS TO REVIEW.

Under the Chinese exclusion act of August 18, 1894 (28 Stat. 390), where an immigration officer has made an order for the deportation of a Chinese person as belonging to a class not entitled to remain in this country, which has not been appealed from, a court has no jurisdiction to review the legality of such order in habeas corpus proceedings.

Appeal from the Circuit Court of the United States for the Western District of Texas.

Henry Terrell, A. G. Foster, and W. W. Howe, for the United States.

T. J. Beall, for appellee.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

McCORMICK, Circuit Judge. This case is stated by counsel for the appellant, with substantial accuracy, as follows:

"Wong Chow, the appellee, filed in the circuit court of the United States for the Western district of Texas on April 16, 1900, his petition, duly verified, for a writ of habeas corpus, wherein he alleged he was illegally deprived of his liberty by the marshal of the Western district of Texas by virtue of an order of deportation, but that petitioner is a Chinese merchant resident and doing business in the United States, and was at the time of his arrest and confinement, and not liable to deportation under the existing laws and treaties. On the same day, Hon. Aleck Boarman, judge, sitting as United States circuit judge for the Western district of Texas, at El Paso, issued a writ of habeas corpus to the marshal, commanding that he produce the body of the petitioner before him in open court on the following day, and show cause for such custody. On April 17th the marshal produced the petitioner, and showed that he was held by virtue of an order of deportation directed to the marshal, and issued by the commissioner at El Paso on March 30, 1900, a copy of which was attached, and which set out, in substance, that upon a trial had before the commissioner the defendant had announced that he was ready for trial, whereupon, after reviewing his plea, and having heard the testimony of all the witnesses offered by each party, the commissioner was of opinion: First, that the defendant was on the 27th day of December, 1899, and is now, unlawfully in, and not entitled to remain in, the United States; second, that he is now, and was on December 27, 1899, a subject of the empire of China,—and thereupon ordered that the defendant be remanded to the custody of the marshal, who shall take him to San Francisco, California, and deliver him to the collector of that port, who shall deport him to China, and in the meantime the marshal shall safely keep the defendant in his custody. On April 17, 1900, the district attorney filed an intervention on behalf of the United States, alleging that the petitioner was legally held by the marshal by virtue of a valid order of deportation directed to him by the commissioner, and that

the order of deportation had not been superseded nor appealed from, but was in full force and effect, wherefore the writ should be dismissed and the petitioner remanded to the custody of the marshal. By way of traverse the petitioner on April 21, 1900, replied that he was and is a merchant in Los Angeles, Cal., coming from China in 1875; that on April 25, 1894, a certificate of residence as a Chinese merchant was issued to him by the collector of internal revenue; that while in El Paso on business, and while at the train attempting to return to Los Angeles, he was arrested by the Chinese inspector, who took his certificate of residence, which was admittedly genuine; that after the cause was instituted the petitioner employed counsel to represent him; that on March 25, 1900, trial was had in the absence of counsel, and the order of deportation attached to the marshal's return was made; that the petitioner is not familiar with the English language and court procedure, and was not informed by interpreter of his right of appeal; that he did not learn of his right until employment of his present counsel, who informed him that the time for appeal had expired; that the order of deportation is illegal and void, in this: that being a Chinese merchant, and in the rightful possession of a genuine certificate of residence, the judgment is in violation of his rights secured by the constitution of the United States and the treaty with China. On April 26, 1900, the intervenor moved to quash the writ of habeas corpus, which was overruled by the court. Thereafter the court heard evidence in support of petition, and, the intervener not having had sufficient time to produce evidence, the court granted leave to produce and file the same prior to May 18, 1900; and, not considering the same material, the court ordered upon May 3, 1900, the discharge of the petitioner from custody, conditioned that pending appeal he enter into bond in the sum of $200. Thereupon the intervener excepted to the order, and in open court gave notice of appeal to the United States circuit court of appeals for the Fifth circuit, which was duly allowed. The appellee entered into bond as required pending appeal. The intervener had the time extended within which to file her bills of exception, and her bills of exception were duly filed September 1, 1900. On October 10, 1900, the appellant filed her assignments of error. Citation on appeal was issued October 16, 1900, and service of the same was acknowledged on the same day."

There are two errors assigned. They present the contention (1) that the circuit court was without jurisdiction to hear and determine this cause, because the petition for the writ, the marshal's return, and the petitioner's traverse show that the petitioner was held by a valid order of deportation, in full force, and from which no appeal was taken; and (2) that the court should have quashed the writ of habeas corpus, for the reason that the record showed that the petitioner was not illegally restrained of his liberty, but was held by virtue of a valid order of deportation issued out of a court having jurisdiction both of the subject-matter and of the person, and not superseded or appealed from, but retaining full force and effect.

It is not necessary for us to follow counsel in their interesting discussion of first principles, and their exhaustive citations and review of the numerous reported decisions of circuit courts, and a few decisions of some of the circuit court of appeals. The result of the decisions by the supreme court is shown in the opinion in the case of Lem Moon Sing v. U. S., 158 U. S. 538, 15 Sup. Ct. 967, 39 L. Ed. 1082, and is thus expressed in the headnote:

"The power of congress to exclude aliens altogether from the United States, or to prescribe the terms and conditions upon which they may come to this country, and to have its declared policy in that respect enforced exclusively through executive officers, without judicial intervention, having been settled by previous adjudications, it is now decided that a statute passed in execution

of that power is applicable to an alien who has acquired a commercial domicile within the United States, but who, having voluntarily left the country, although for a temporary purpose, claims the right under some law or treaty to re-enter it."

We make the following quotation from the opinion:

"The contention is that while, generally speaking, immigration officers have jurisdiction, under the statute, to exclude an alien who is not entitled under some statute or treaty to come into the United States, yet if the alien is entitled, of right, by some law or treaty, to enter this country, but is nevertheless excluded by such officers, the latter exceed their jurisdiction; and their illegal action, if it results in restraining the alien of his liberty, presents a judicial question, for the decision of which the courts may intervene upon a writ of habeas corpus. That view, if sustained, would bring into the courts every case of an alien who claimed the right to come into the United States under some law or treaty, but was prevented from doing so by the executive branch of the government. This would defeat the manifest purpose of congress in committing to subordinate immigration officers and to the secretary of the treasury exclusive authority to determine whether a particular alien seeking admission into this country belongs to the class entitled by some law or treaty to come into the country, or to a class forbidden to enter the United States. Under that interpretation of the act of 1894, the provision that the decision of the appropriate immigration or customs officers should be final, unless reversed on appeal to the secretary of the treasury, would be of no practical value."

The language of the statute just referred to is in these words:

"In every case where an alien is excluded from admission into the United States under any law or treaty now existing or hereafter made, the decision of the appropriate immigration or custom officers, if adverse to the admission of such alien, shall be final, unless reversed on appeal to the secretary of the treasury." Act Aug. 18, 1894 (28 Stat. 390).

In the most recent case,—Li Sing v. U. S. (decided March 18, 1901, not yet officially reported) 21 Sup. Ct. 449,—the concluding paragraph in the opinion is instructive. It reads:

"We cannot, however, yield to the earnest contention made in behalf of inoffensive Chinese persons who seek to come within the limits of the United States and submit themselves to their jurisdiction, by modifying or relaxing, by judicial construction, the severity of the statutes under consideration. We can but repeat what was said to similar appeals in the case of Fong Yue Ting v. U. S., 149 U. S. 698–729, 13 Sup. Ct. 1016, 37 L. Ed. 905: 'The question whether, and upon what conditions, these aliens shall be permitted to remain within the United States, being one to be determined by the political departments of the government, the judicial department cannot properly express an opinion upon the wisdom, the policy, or the justice of the measures enacted by congress in the exercise of the powers confided to it by the constitution over this subject.'"

It is therefore clear that it was the duty of the circuit court to dismiss the writ of habeas corpus, and leave the petitioner in the custody of the marshal, to be disposed of by him in accordance with the order for deportation. The judgment of the circuit court is reversed. and the cause remanded to that court, with direction to remand the appellee to the custody of the marshal.