Elias F. MANSUR, Plaintiff,

v.

Madeleine ALBRIGHT, Secretary of State, et al., Defendants.

No. Civ.A. 00–1790–LFO.

United States District Court, District of Columbia.

Jan. 19, 2001.

John M. Dowd, Terence J. Lynam, Jonathan S. Spaeth, James C. Osborne, Jr., Mary Ellen Fleck, Jeffrey M. King, Akin Gump Strauss Hauer & Feld, LLP, Washington, DC, for plaintiff.

Wilma A Lewis, U.S. Attorney, Mark Enagle, Assistant U.S. Attorney, W. Mark Nebeker, Assistant U.S. Attorney, Washington, DC, for defendants.

## MEMORANDUM

OBERDORFER, District Judge.

Defendants have filed a motion to dismiss, arguing that this court lacks jurisdiction to review the Secretary of State's revocation of plaintiff's visa. Defendants also assert that plaintiff has not exhausted available administrative remedies. A brief summary of the relevant facts is set forth below.[1]

Plaintiff is a citizen of the Netherlands, resident of Aruba, who held a United States visa first issued to him in the 1960s. In August 1997, the U.S. Consul with responsibility for Aruba determined that plaintiff was ineligible for a visa, but did not revoke it. The Consul placed plaintiff's name on the visa lookout system with a 2C code, thereby notifying U.S. immigration officers that plaintiff was no longer eligible for entry into the United States, his visa notwithstanding. Plaintiff never-theless entered the United States several times between August 1997 and October 1999, without hindrance on account of the 2C lookout entry. In October 1999, immigration officers in Miami, finally reacting to the 1997 2C notification, stopped plaintiff from entering the United States, and he returned to Aruba where he remained, still in possession of his U.S. visa. In March 2000, the Consul, reacting to entreaties from plaintiff's counsel sought the advice of the Department of State visa office with respect to the 2C "lookout." On April 6, 2000, the State Department advised the Consul that his 2C determination was not supported by sufficient evidence. Subsequently, the State Department received additional information, and on July 14, 2000, the Deputy Assistant Secretary of State for Visa Services revoked plaintiff's visa pursuant to 8 U.S.C. § 1201(i), which provides, "After issuance of a visa or other documentation to any alien, the consular officer or the Secretary of State may at any time, in his discretion revoke such visa or other documentation."[2] In addition, the Deputy Assistant Secretary either changed or advised the Consul to change plaintiff's status in the visa lookout system from 2C to P2C (eligibility under review). Thus, as of July 14, 2000, plaintiff's access to the United States was barred for want of a valid visa, even though, if he had one, or if the one he had were valid, he could enter the United States regardless of the P2C status. There is nothing in the record to show that the Deputy Assistant Secretary gave plaintiff the pre-revocation notice, or the opportunity to protest or that she made any finding of inadmissibility or ineligibility required of consular officers by 22 C.F.R. § 41.122.

Plaintiff here challenges only the action of the Secretary which revoked the visa. He points to the fact that while 8 U.S.C.

---

1. A more extensive recitation of the facts is presented in the November 6, 2000 Memorandum Opinion denying plaintiff's motion for preliminary injunction, and in the timeline, "The Undisputed Facts," prepared by plaintiff, and attached hereto as Exhibit 1.

2. Delegation of Authority No. 74 and Re-delegation of Authority 74–3–A delegated the Secretary of State's revocation power to the Assistant Secretary of State for Consular Affairs and the Deputy Assistant Secretary of State for Visa Services.

§ 1201(i) purports to give both the consular officer and the Secretary discretion to revoke a visa, regulations require that a consular officer contemplating revocation of a visa give a visa holder notice, an opportunity to react, and to make a finding of ineligibility before revoking. *See* 22 C.F.R. § 41.122(b) (notice and opportunity to respond), 22 C.F.R. § 41.122(g) (reconsideration of revocation), 22 C.F.R. § 41.122(a) (ineligibility finding required). It is clear from the foregoing that the Deputy Assistant Secretary of State did not adhere to these regulations in revoking plaintiff's visa. Plaintiff first argues that the Deputy Assistant Secretary of State for Visa Services was acting as a consular officer when she revoked the visa, therefore her failure to adhere to the applicable regulations was arbitrary and capricious or unlawful under the Administrative Procedure Act.

■ The Deputy Assistant Secretary of State for Visa Services is, by definition, a consular officer. *See* 22 C.F.R. 40.1(d). Thus, there is a threshold question of whether the action of the Secretary was taken by her delegate in exercise of her discretionary authority as Secretary, or her parallel authority as a consular officer. A July 18, 2000 letter from the Consul General in Caracas, Venezuela notifies Mansur of the Secretary's revocation of his visa, invoking the authority under 8 U.S.C. § 1201(i), which she has delegated to the Assistant Secretary of State for Consular Affairs, and delegated, in turn, to the Deputy Assistant Secretary of State for Visa Services. *See* July 18, 2000 Letter from Sandra Salmon, Consul General to Elias Mansur, Plaintiff's Motion for Preliminary Injunction, Exhibit P. From the foregoing, it is inescapable to conclude that the Deputy Assistant Secretary revoked the plaintiff's visa in her delegated capacity, not as a consular officer.

Defendants claim that even if the Deputy Assistant Secretary were acting as a consular officer in revoking the visa, her action would be unreviewable. *See Bruno*

*v. Albright*, 197 F.3d 1153 (D.C.Cir.1999). Whether a consular officer's revocation decision, made in clear disregard of applicable regulations, is subject to judicial review is a intriguing question. In this case, however, the Deputy Assistant Secretary was not acting as a consular officer, therefore, it is not necessary to reach that question.

Plaintiff next argues that the Secretary of State and her delegate are subject to the revocation regulations governing consular officers, even when acting as the Secretary of State. Therefore, plaintiff claims, the failure of the Deputy Assistant Secretary of State for Visa Services to comply with the applicable regulations in revoking plaintiff's visa was arbitrary and capricious or unlawful under the Administrative Procedures Act.

■ Section 701(a)(2) of the Administrative Procedure Act precludes judicial review where agency action is committed to agency discretion by law. Although there is a strong presumption of reviewability under the APA, *Abbott Labs. v. Gardner*, 387 U.S. 136, 140, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), agency action is committed to the agency's discretion when "statutes are drawn in such broad terms that in a given case there is no law to apply," *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971) (internal quotations omitted), or there is "no meaningful standard against which to judge the agency's exercise of discretion." *Id.* No statute or regulation imposes any such limitations on the discretion offered the Secretary, *qua* Secretary, or her delegate by 8 U.S.C. § 1201(i). The regulations concerning visa revocations limit only consular officers. *See* 22 C.F.R. § 41.122(a) ("A *consular officer* is authorized to revoke a nonimmigrant visa issued to an alien if. . . ." (emphasis added)). Without such statutory or regulatory limitation, there is no law to apply to the Secretary's discretionary revocation, and this court lacks jurisdiction to review the revocation by the Secretary's delegate.

This conclusion comports with the ancient principle of international law that the "power to exclude aliens is 'inherent in sovereignty, necessary for maintaining normal international relations and defending the country against foreign encroachments and dangers—a power to be exercised exclusively by the political branches of government'" *Kleindienst v. Mandel,* 408 U.S. 753, 765, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972) (quoting *The Chinese Exclusion Case, Ping v. U.S.,* 130 U.S. 581, 609, 9 S.Ct. 623, 32 L.Ed. 1068 (1889)). Thus "[t]he power of Congress to exclude aliens altogether from the United States, or to prescribe the terms and conditions upon which they may come into this country, and to have its declared policy in that regard enforced exclusively through executive officers, without judicial intervention, is settled...." *Lem Moon Sing v. United States,* 158 U.S. 538, 547, 15 S.Ct. 967, 39 L.Ed. 1082 (1895) (1895); *see also Mandel,* 408 U.S. at 766 n. 6, 92 S.Ct. 2576. It is "not within the province of any court, unless expressly authorized by law, to review the determination of the political branch of the Government to exclude a given alien." *United States ex rel. Knauff v. Shaughnessy,* 338 U.S. 537, 543, 70 S.Ct. 309, 94 L.Ed. 317 (1950); *see also Bruno,* 197 F.3d at 1162 ("... there may be no judicial review of the decisions to exclude aliens unless Congress has 'expressly authorized' this"). This historical backdrop adds support to the conclusion that the Secretary of State, if acting as Secretary, not as a consular officer, in exercise of the Constitutional and inherit authority of the sovereign in the field of foreign affairs, is immune from the regulations governing consuls, and immune from judicial review by Constitutional separation of powers principles, at least until Congress says otherwise.

Holding that there is no jurisdiction to review the Secretary's revocation of plaintiff's visa does not leave plaintiff without recourse. He may submit a new visa application to the Consular Officer with responsibility for Aruba. This officer is authorized to make an independent review concerning plaintiff's visa eligibility, in accordance with the applicable regulations concerning visa applications. Plaintiff may present evidence concerning his eligibility at that time and may be granted a visa.

Plaintiff's final claim concerns his request that the 2C code in the visa lookout system be removed. The parties agree that the 2C code was removed months ago and that the P2C notation which replaced it in the database does not violate the Foreign Relations Authorization Act. Therefore, plaintiff's claim is moot.

An accompanying order grants defendants' motion to dismiss.

## ORDER

Pending is defendants' motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(1) and (6). Dkt. 32. For the reasons stated in the accompanying memorandum, it is this 19th day of January 2001 hereby

ORDERED: that defendants' Motion to Dismiss is GRANTED, and it is further

ORDERED: that plaintiff's complaint be and hereby is dismissed.

PLAINTIFF'S

# The Undisputed Facts

## Elias F. Mansur

- Educated and taught in U.S.
- Owns real and personal property in U.S.
- Pays taxes in U.S.
- Conducts lawful, commercial business in U.S.
- No arrests, convictions or investigations.

## The Government

**Timeline (top, Government events):**

- **August 1997** — Permitted Mansur entry to U.S. approximately 250 times
- State placed Mansur's name in Lookout System as "2C", indicating "a definite finding of ineligibility" (No notice to Mansur) (Gorsky Decl., Opp. to Mot. for Prelim. Injunc.)
- **October 25 & 26, 1999** — INS denies Mansur entry in Miami, visa not cancelled
- **March 15, 2000** — Embassy requests Advisory Opinion from State concurring with Embassy's determination that Mansur "was ineligible" and that Embassy "could revoke" Mansur's visa (Alston Decl., Opp. To Mot. for Prelim. Injunc.)
- **April 6, 2000** — State's Advisory Opinion: Information reported by Embassy "not legally sufficient to support an ineligibility finding" (Nevertheless, "2C" flag not removed) (Gorsky Decl., Opp. To Mot. for Prelim. Injunc.)

**Timeline (bottom, Mansur events):**

- **1958** — 40 years of lawful, uninterrupted travel to U.S. Approximately 250 times (Mansur Decl., Reply in Support of Mot. for Prelim. Injunc.)
- Lawfully entered U.S. 34 times
- **Nov. 16, 1999** — First written submission and first of ten offers for interview
- **April 3, 2000** — FOIA request to State & INS (Tabs D & E, Mot. for Prelim. Injunc.)
- **April 7, 2000** — Second written submission and fourth of ten offers for interview (Tab 5, Reply in

**64**