### AMERICAN SOUTH AFRICAN LINE v. UNITED STATES.

District Court, S. D. New York.
Jan. 6, 1932.

Kirlin, Campbell, Hickox, Keating & McGrann, of New York City, for plaintiff.

George Z. Medalie, U. S. Atty., of New York City (Frederick H. Cunningham, of New York City, of counsel), for the United States.

MACK, Circuit Judge.

The petition, brought under the Tucker Act (24 Stat. 505), alleges that on a voyage of the Eastern Glen from New York to Africa and return, as the ship was lying moored at Lourenco Marques in Portuguese East Africa, Emerson, second assistant engineer, while leaving it about 2 a. m. on December 19, 1927, to go ashore for his own purposes, and while intoxicated, fell from the gangway to the fender between the ship and dock, sustaining severe injuries; that he was transferred to the local hospital and on December 20th was duly discharged from the service of the Eastern Glen and signed off the articles before the United States consul at that port, the balance of his earned wages to date being paid to him.

It further alleges that his condition necessitated his maintenance in the local hospital and transportation back to the United States; that while he was in the hospital the Secretary of State of the United States notified plaintiff that responsibility for his maintenance and return to the United States was on it; that it wrote to the Secretary of State that the government was responsible for such expenses under 46 U. S. C. § 683 (46 USCA § 683); that plaintiff offered to the Secretary of State to make arrangements for his maintenance and return without prejudice to its rights to reimbursement, but was informed by him that, as the Comptroller General in charge of the funds for relief of destitute seamen had taken the position that such claims could not be honored, the Department would be unable to assist the plaintiff to procure reimbursement, although it was at liberty to file a claim with the Comptroller therefor.

Plaintiff further alleges that, because of Emerson's necessitous condition and lack of means, it advanced the cost of his maintenance at the port and of his return; that on April 13, 1928, plaintiff placed Emerson upon its ship Eastern Glen for return to the United States, and, because of the need therefor, hired a physician and a nurse to accompany and care for him on said voyage; that May 30, 1928, the vessel arrived in New York, and Emerson was transferred to the Marine Hospital, where he died, June 14, 1928.

Plaintiff alleges that the expenses of maintenance and return, amounting to $4,754.77, which are scheduled, were reasonably and necessarily incurred and paid for this sum, with interest, it asks judgment.

Assuming, without deciding, that, contrary to the present holdings of the Comptroller General (14 Comp. Dec. 570; 15 Comp. Dec. 348), but in accordance with an earlier view (6 Comp. Dec. 603), under the italicized sentences in 46 U. S. C. § 683 (46 USCA § 683), quoted in the margin [1], the burden of maintenance for and return to the United States of an American seaman discharged in a foreign port on account of injury or illness, incapacitating him for service, is cast upon the government instead of on the shipowner, as it had been theretofore, nevertheless, in my opinion, the complaint fails to state a cause of action. Sections 678, 679, and 680 of title 46 of the United States Code (46 USCA §§ 678–680) provide that subsistence and passage home for destitute American seamen shall be furnished by the United States, and set forth the steps directed to be taken by consular officers in effecting the aid thus provided. The basic content of these sections has been a part of our statutory law since the Act of Feb. 28, 1803, c. 9, § 4, 2 Stat. 204, embodied in Rev. St. § 4578; the case of destitute seamen too ill to perform duty is provided for by the amendment to that section in the Act of June 26, 1884, c. 121, § 9, 23 Stat. 55. Rev. St. § 4581, as amended by the Act of June 26, 1884, c. 121, § 7, 23 Stat. 55, the Act of April 4, 1888, c. 61, § 3, 25 Stat. 80, and, finally, the Act of Dec. 21, 1898, c. 28, § 16, 30 Stat. 759, now 46 U. S. C. § 683 (46 USCA § 683),

---

[1] **§ 683.** *Penalty for Neglect of Consular Officer to Collect Wages; Incapacitated Seaman.* If any consular officer, when discharging any seaman, shall neglect to require the payment of and collect the arrears of wages and extra wages required to be paid in the case of the discharge of any seaman, he shall be accountable to the United States for the full amount thereof. The master shall provide any seaman so discharged with employment on a vessel agreed to by the seaman, or shall provide him with one month's extra wages, if it shall be shown to the satisfaction of the consul that such seaman was not discharged for neglect of duty, incompetency, or injury incurred on the vessel. If the seaman is discharged by voluntary consent before the consul, he shall be entitled to his wages up to the time of his discharge, but not for any further period. If the seaman is discharged on account of injury or illness, incapacitating him for service, the expenses of his maintenance and return to the United States shall be paid from the fund for the maintenance and transportation of destitute American seamen. "Provided, That at the discretion of the Secretary of Commerce, and under such regulations as he may prescribe, if any seaman incapacitated from service by injury or illness is on board a vessel so situated that a prompt discharge requiring the personal appearance of the master of the vessel before an American consul or consular agent is impracticable, such seaman may be sent to a consul or consular agent, who shall care for him and defray the cost of his maintenance and transportation, as provided in this paragraph. (R. S. § 4581; June 26, 1884, c. 121, § 7, 23 Stat. 55; Apr. 4, 1888, c. 61, § 3, 25 Stat. 80; Dec. 21, 1898, c. 28, § 16, 30 Stat. 759; Mar. 4, 1915, c. 153, § 19, 38 Stat. 1185.)"

make further provision for seamen discharged on account of illness or injury.

The question here to be determined is whether the last sentence of the first paragraph of section 683 is to be interpreted as an offer by the United States unconditionally to reimburse the shipowner, or indeed any one, who provides maintenance and return passage for such a seaman after the latter signs off, or whether such reimbursement out of the specified fund is conditioned upon compliance with the several steps specified in section 678 to section 680 in respect to the return of destitute seamen at government expense.

The contention of counsel for the plaintiff that Congress deliberately invited all the world to act because of its awareness that the situation of the seaman will frequently, as a matter of humanity, require emergency treatment, cannot be accepted. Under section 683 a consul or consular agent who participates in the discharge will be on hand to represent the government; there is no occasion therefore for such an invitation. Congress would naturally assume in legislation of this kind, especially in view of the penalty imposed in case of willful neglect or omission of duty by consuls (22 U. S. C. § 103 [22 USCA § 103]), that they would do their duty. They might fail therein; they might misunderstand the true condition. An injured seaman might have to rely on the charity of a foreign world. His absolute protection might make it desirable to give the shipowner, or indeed any one else, the right, at government expense, to do what the consul is charged with doing. If such was the intent of Congress, it was capable of clear expression. That expression is entirely lacking in this section, read in the light of the other provisions for seamen and of the history of such legislation. Moreover, Congress had, as early as 1811, in the Act of Feb. 28, 1811, c. 28, 2 Stat. 651, now embodied in 46 U. S. C. § 681 (46 USCA § 681), relating to seamen transported from foreign ports where there is no consular officer, found no difficulty in indicating in unmistakable language its intent to indemnify any one who might act to help destitute American seamen in such a situation. That the interpretation contended for by plaintiff would open up a wide field for controversy as to the reasonableness of the expenditures is evidenced by the amount of the claim in this case, aggregating $4,750, and by the nature of the expenses incurred.

Inasmuch as the requirements of sections 678 and 680 have never been complied with, the disbursements of the plaintiff must be deemed voluntary, and, as such, not recoverable.

Motion granted.