Maria De Las Nieves Taveras De
PENA, Plaintiff,

v.

Henry A. KISSINGER, Secretary of
State of the United States, et al.,
Defendants.

No. 75 Civ. 414(MP).

United States District Court,
S. D. New York.

March 2, 1976.

Antonio C. Martinez, New York City, for plaintiff.

Paul J. Curran, U. S. Atty. for the Southern District of New York, New York City by Mary P. Maguire, New York City, Sp. Asst. U. S. Atty., for defendants.

## OPINION

POLLACK, District Judge.

Plaintiff seeks review of the allegedly capricious decision of the American Consul in Santo Domingo denying an immigrant visa to her husband, Francisco A. Pena, a Dominican Republic, Western Hemisphere citizen who intends to work in the United States. Plaintiff is also a native and citizen of the Dominican Republic, but is a lawful permanent resident of the United States.

Mr. Pena applied for the visa as the spouse of a lawful permanent resident of the United States. The Consul, a defendant herein, denied his application on the ground that Pena's marriage to the plaintiff was a sham and undertaken to facilitate his immigration to the United States.

Plaintiff sues for a declaratory judgment that her marriage to Pena is a valid one, and for a direction to the Consul to process Pena's visa application on that basis. She also claims damages for alleged harm caused by the defendants' adverse determination.

The defendants, officials of the State Department and a consulate employee, have moved pursuant to Fed.R.Civ.P. 56 for summary judgment on the grounds that the plaintiff lacks standing to sue, that a consul's denial of a visa application is not subject to judicial review, and that mandamus jurisdiction may not be invoked against consular officials in regard to the processing of visas.

While the outcome might be different if this Court were "writing on a clean slate," *Galvan v. Press,* 347 U.S. 522, 530, 74 S.Ct. 737, 742, 98 L.Ed. 911, 921 (1954) (Frankfurter, J.), the defendants' motion for summary judgment must be granted partially and the complaint dismissed insofar as it seeks declaratory and injunctive relief. However, for the reasons which appear hereafter, summary judgment may not now be entered against plaintiff with respect to her claim for alleged damages.

### A. Background

It is undisputed that the plaintiff married Mr. Pena in New York City on March 27, 1971. He thereafter returned to the Dominican Republic and formally applied for an immigrant visa at the United States Consulate in Santo Domingo. The Consul denied Mr. Pena's visa application on November 19, 1973 after interviewing him and conducting an investigation into his marital status. The Consul apparently refused Mrs. Pena's request to be interviewed.

The Consul acted pursuant to § 212(a)(14) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(14), which provides that an alien who intends to work in the United States is ineligible to receive a visa unless the Secretary of Labor has certified, in effect, that the alien's employment will not displace that of American workers or adversely affect their wages and working conditions. Plaintiff makes no contention that her husband is not subject to this statute, or that he is qualified for such a certifica-

tion by the Secretary. However, she relies on the exemption from the labor certification requirement in favor of any "immigrant who was born in any independent foreign country of the Western Hemisphere" and who is the spouse of an American citizen or an alien lawfully admitted to the United States for permanent residence. *Id.*; 8 U.S.C. § 1101(a)(27)(A). Plaintiff contends that the Consul acted arbitrarily and capriciously in determining that her husband was not entitled to this exemption. While the *bona fides* of plaintiff's marriage to Mr. Pena present the central issue going to the merits of the case, there are no factual controversies which are material to the legal grounds on which the government relies on its summary judgment motion. Those legal contentions are therefore ripe for resolution at this time. *See Heyman v. Commerce & Industry Insurance Co.,* 524 F.2d 1317 (2d Cir. 1975).

### B. Standing

■ The test for standing to obtain judicial review of agency action in the federal courts is clear: a plaintiff must assert that the challenged action has caused her " 'injury in fact,' " and that the alleged injury was to an interest " 'arguably within the zone of interests to be protected or regulated' " by the statute which was allegedly violated. *Sierra Club v. Morton,* 405 U.S. 727, 733, 92 S.Ct. 1361, 1365, 31 L.Ed.2d 636, 642 (1972). The injury need not involve economic harm, but must be "something more than an ingenious academic exercise in the conceivable." *United States v. Students Challenging Regulatory Agency Procedures,* 412 U.S. 669, 688, 93 S.Ct. 2405, 2416, 37 L.Ed.2d 254, 270 (1973).

■ The plaintiff in this case has little difficulty passing this test. It takes no academic ingenuity to conclude that agency action which separates wife from husband gives rise to perceptible injury, and the plaintiff has so asserted in her complaint. It is no answer to say that the defendants have not prevented Mrs.

Pena from travelling to Santo Domingo to join her husband, for to do so she would be forced to sacrifice the opportunities and advantages offered by her adopted country, which has admitted her to lawful permanent residence.

■ It also appears that plaintiff's injury—her inability to live in the United States with her husband—is to an interest arguably protected by § 212(a)(14) of the Immigration and Nationality Act. In exempting the alien spouses of resident Americans from the rigorous labor certification requirement imposed by that section, the statute at least arguably seeks to prevent the breakup of the nuclear family and to preclude the emotional and financial hardship which would otherwise befall both marital partners.

The conclusion that Mrs. Pena has standing to bring this action finds support in the recent and analogous cases involving judicial review of labor certification decisions by the Secretary of Labor. In *Pesikoff v. Secretary of Labor,* 163 U.S.App.D.C. 197, 501 F.2d 757, *cert. denied,* 419 U.S. 1038, 95 S.Ct. 525, 42 L.Ed.2d 315 (1974), an American employer was deemed to have standing to challenge the Secretary's denial of a labor certification for an alien whom the plaintiff sought to employ; the Court held that an employer's ability to obtain qualified employees was arguably within the zone of interests protected by § 212(a)(14). *Accord, Secretary of Labor v. Farino,* 490 F.2d 885 (7th Cir. 1973); *Digilab, Inc. v. Secretary of Labor,* 495 F.2d 323 (1st Cir. 1974). These cases suggest that permanent American residents who are aggrieved by decisions made under § 212(a)(14) have standing to seek review. If would-be employers of aliens may do so, it does not seem improper to confer a similar right of standing on an aggrieved spouse.

■ The government's reliance on such cases as *Noel v. Chapman,* 508 F.2d 1023 (2d Cir.), *cert. denied,* 423 U.S. 824, 96 S.Ct. 37, 46 L.Ed.2d 40 (1975), and *Silverman v. Rogers,* 437 F.2d 102

(1st Cir. 1970), *cert. denied,* 402 U.S. 983, 91 S.Ct. 1667, 29 L.Ed.2d 149 (1971), to support a contrary conclusion misses the mark. These decisions are authority for the proposition that an American citizen has no constitutional right to live with an alien spouse in the United States, and that the government does not infringe the citizen's constitutional rights if it deports the alien. *Noel v. Chapman,* 508 F.2d at 1027–28. These cases are irrelevant to the analysis of Mrs. Pena's standing to bring this suit, since a plaintiff need not allege the infringement of a constitutional right in order to have standing to challenge agency action. Mrs. Pena alleges merely that she has been harmed because a statute has been violated, not the Constitution, and that is all she need allege to seek review.

Finally, it should be noted that this case involves a plaintiff who is a lawfully admitted alien resident in the United States, not a non-resident alien seeking to bring suit from abroad. Whether the latter category of alien would have standing presents an issue which this Court need not decide. *Compare Brownell v. Tom We Shung,* 352 U.S. 180, 184 n. 3, 77 S.Ct. 252, 255, 1 L.Ed.2d 225, 229 (1956) (non-resident alien may not sue from abroad) and *Chinese American Civic Council v. Attorney General,* 396 F.Supp. 1250 (D.D.C.1975) *with Estrada v. Ahrens,* 296 F.2d 690, 693–95 (5th Cir. 1961).

### C. Judicial Review

Notwithstanding plaintiff's standing to bring suit, the government maintains that the decision of an American consul to deny a visa to an alien is not subject to review in the courts. The precedents do appear to distinguish between a decision to deport an alien who is already in the United States and a decision to exclude or deny admission to an alien who remains outside; review is permitted of the former even where the alien initially gained admission illegally, but denied of the latter. *See, e. g., United States ex rel. Knauff v. Shaughnessy,* 338 U.S. 537, 543, 70 S.Ct. 309, 312, 94 L.Ed. 317, 324 (1950); *Shaughnessy v. United States ex rel. Mezei,* 345 U.S. 206, 73 S.Ct. 625, 97 L.Ed. 956 (1953).

Thus, there is substantial support in the cases for the government's position that consular decisions in regard to the issuance of visas are unreviewable. In *United States ex rel. London v. Phelps,* 22 F.2d 288 (2d Cir. 1927), *cert. denied,* 276 U.S. 630, 48 S.Ct. 324, 72 L.Ed. 741 (1928), the Second Circuit declared:

> Whether the consul has acted reasonably or unreasonably is not for us to determine. Unjustifiable refusal to visé a passport may be ground for diplomatic complaint by the nation whose subject has been discriminated against. . . . It is beyond the jurisdiction of the court. 22 F.2d at 290.

A similar view was expressed in *United States ex rel. Ulrich v. Kellogg,* 58 App. D.C. 360, 30 F.2d 984, *cert. denied,* 279 U.S. 868, 49 S.Ct. 482, 73 L.Ed. 1005 (1929). These cases have been cited as authority in more recent decisions which find such consular decision-making immune from judicial scrutiny. *See Loza-Bedoya v. INS,* 410 F.2d 343 (9th Cir. 1969); *Licea-Gomez v. Pilliod,* 193 F.Supp. 577 (N.D.Ill.1960).

As a consequence, American Consuls appear free to act arbitrarily or even maliciously in their conduct toward foreign nationals seeking entrance into the United States. This result has been labelled "brutal," and a "trivializ[ation] [of] the great guarantees of due process," Hart, *The Power of Congress to Limit the Jurisdiction of Federal Courts: An Exercise in Dialectic,* 66 Harv.L.Rev. 1362, 1395 (1953), as well as "an astonishing anomaly in American jurisprudence," Rosenfield, *Consular Non-Reviewability: A Case Study in Administrative Absolutism,* 41 Amer.Bar Assoc.J. 1109, 1110 (1955).

The law has undergone considerable change since the decisions were rendered in *London, Ulrich, Knauff* and *Mezei.* The rights afforded to aliens have been expanded, whether they are in the United States lawfully, *see Graham v. Richardson,* 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971), unlawfully,

see generally Holley v. Lavine, 529 F.2d 1294 (2d Cir. 1976), or interacting with American officials outside the United States, see United States v. Toscanino, 500 F.2d 267, 280 (2d Cir. 1974). Similarly, the Courts have adopted a more favorable attitude to the reviewability of administrative action under the Administrative Procedure Act, see Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). Since that Act applies to action by the State Department involving immigration matters, see Rusk v. Cort, 369 U.S. 367, 82 S.Ct. 787, 7 L.Ed.2d 809 (1962), it might have been expected that the "astonishing anomaly" of consular non-reviewability would also undergo change. See Rodriguez v. Rogers, Civ.No.72–5233 (S.D. N.Y., Oct. 30, 1973) (Frankel, J.).

Indeed, while the Supreme Court asserted in Knauff that "it is not within the province of any court, unless expressly authorized by law, to review the determination of the political branch of the Government to exclude a given alien," 338 U.S. at 543, 70 S.Ct. at 312 (emphasis added), it subsequently declared in Rusk v. Cort, supra, that exceptions to the APA's presumption of reviewability of decisions made under the Immigration and Nationality Act would not be made "in the absence of clear and convincing evidence that Congress so intended." 369 U.S. at 380, 82 S.Ct. at 794. Thus, it appears true that "the courts have liberalized the standard governing reviewability" of administrative action in the immigration area. See Rumahorbo v. Secretary of Labor, 390 F.Supp. 208, 209 (D.D.C.1975).

■ Nonetheless, the Supreme Court in Kleindienst v. Mandel, 408 U.S. 753, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972), has recently reaffirmed the older authorities which restrict the reviewability of decisions by immigration officials. It appears that if plaintiff's claim to review here is controlled by Mandel, the defendants are entitled to summary judgment on the issue discussed.

In Mandel, the Attorney General had denied permission to enter the United States to Dr. Ernest Mandel, a Belgian journalist and " 'revolutionary Marxist' " who had been invited for a brief visit by a number of American universities. Dr. Mandel was ineligible for a visa under § 212(a)(28)(D) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(28) (D), as an advocate of "world communism;" however, the Attorney General had the authority "in [his] discretion," to direct that Mandel be issued a visa despite his inadmissibility. § 212(d)(3)(A), 11 U.S.C. § 1182(d)(3)(A). The Attorney General refused to grant such a waiver, and review was sought in the courts. Plaintiffs, who included several university professors who had invited Mandel to their campuses, asserted that the Attorney General had infringed their First Amendment rights by preventing them from engaging Mandel in academic debate.

The Supreme Court recognized that "First Amendment rights are implicated," 408 U.S. at 765, 92 S.Ct. 2576, but held that judicial review was unavailable where the government had acted on "the basis of a facially legitimate and bona fide reason." 408 U.S. at 770, 92 S.Ct. at 2585. In reaching that conclusion the Court relied upon—and explicitly declined to reconsider—an 1895 opinion in which the Court had declared:

The power of congress to exclude aliens altogether from the United States, or to prescribe the terms and conditions upon which they may come to this country, and to have its declared policy in that regard enforced exclusively through executive officers, without judicial intervention, is settled by our previous adjudications. 408 U.S. at 766, 92 S.Ct. at 2583 (emphasis added), citing Lem Moon Sing v. United States, 158 U.S. 538, 547, 15 S.Ct. 967, 970, 39 L.Ed. 1082, 1085.

Consequently, the Court concluded that it was unnecessary to balance the plaintiffs' First Amendment rights against the government's interest in excluding Mandel. 408 U.S. at 765.

In holding that the Courts may not "look behind the exercise" of an official's

discretionary authority to deny admission to an alien, the *Mandel* Court has seemingly precluded Mrs. Pena's ability to invoke judicial scrutiny of the Consul's denial of a visa to her husband. That result might be different were it possible to characterize the review sought here as involving only the Consul's decision concerning the *bona fides* of plaintiff's marriage, and not the visa denial. Such a characterization would be disingenuous, however, since the status of the marriage is merely an element in Mr. Pena's eligibility for a visa. The Consul's determination regarding the marriage is the "facially legitimate and bona fide reason" which is the basis for the discretionary decision on the visa application; as such, *Mandel* interdicts Court examination of the Consul's determination.

This result may seem anomalous, since the Courts are not reluctant to review the validity of marriages, even in the immigration context, where the challenged decision has been made by an official of the Immigration and Naturalization Service as distinguished from a Consul in the employ of the State Department. *See, e. g., Kokkinis v. District Director, INS,* 429 F.2d 938 (2d Cir. 1970); *Bark v. INS,* 511 F.2d 1200 (9th Cir. 1975); *Ferrante v. INS,* 399 F.2d 98 (6th Cir. 1968). Moreover, judicial review is common of agency determinations—involving the denial of a labor certification—made pursuant to 8 U.S.C. § 1182(a)(14), the very statute under which the defendants here acted when they determined that Mr. Pena was subject to the labor requirement because his marriage was spurious. *See, e. g., Pesikoff v. Secretary of Labor, supra; Secretary of Labor v. Farino, supra; Ozbirman v. Regional Manpower Administrator,* 335 F.Supp. 467 (S.D.N.Y.1971).

 It is thus arguable that the plaintiff should nonetheless be entitled to judicial review here to assure, at a minimum, that her constitutional right to procedural due process has been satisfied by the Consul's decision-making procedures. As a resident legal alien, plaintiff is entitled to the full panoply of constitutional protection. *See Graham v. Richardson, supra.* Consequently, while "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned," *United States ex rel. Knauff v. Shaughnessy, supra,* 338 U.S. at 544, 70 S.Ct. at 313, 94 L.Ed. at 325, it may not be due process as far as it affects an American citizen or permanent resident alien who has standing, as does the plaintiff here, to challenge it. Furthermore, it is settled that agency action which is committed to the agency's discretion and thus otherwise foreclosed from judicial review is nevertheless reviewable if it allegedly exceeds constitutional bounds. *See Ness Investment Corp. v. United States Department of Agriculture,* 512 F.2d 706, 715 (9th Cir. 1975); *Wong Wing Hang v. INS,* 360 F.2d 715, 719 (2d Cir. 1966) (non-reviewable, discretionary agency conduct may be reviewed where decision "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as an invidious discrimination against a particular race or group"). *Cf. McRedmond v. Wilson,* 533 F.2d 757 (2d Cir. 1976) ("' . . . wherever the Federal courts sit, human rights under the Federal Constitution are always a proper subject for adjudication . . .'"). Accordingly, this analysis suggests that Mrs. Pena is entitled to a review of the Consul's assessment of the status of her marriage to determine if his decision was reached so arbitrarily and capriciously as to violate her right to procedural due process.

However appealing this argument may be, it appears to run afoul of *Mandel.* In that case, the plaintiffs were Americans who sought to interpose the Constitution between themselves and a discretionary exercise of power by the Attorney General which affected them while acting directly upon an alien abroad; the Supreme Court decided that the constitutional interests recognized there were not susceptible of judicial protection in the face of the "plenary congressional power to make policies and rules for ex-

clusion of aliens . . . ." 408 U.S. at 769, 92 S.Ct. at 2585, 33 L.Ed.2d at 696. Since it would be outside the province of a District Court to disregard this lesson from the High Court, *but see Hart, supra,* 66 Harv.L.Rev. at 1396 ("when justices . . . write opinions in behalf of the Court which ignore the painful forward steps of a whole half century of adjudication, making no effort to relate what then is being done to what the Court has done before, they write without authority for the future"), plaintiff is not entitled to judicial review of the Consul's decision.

### D. Damages

Although plaintiff's claims for declaratory and injunctive relief must be denied in light of the foregoing, her claim for compensatory and punitive damages for emotional pain and humiliation caused by the conduct of the defendants remains.

The government has neglected to address that aspect of the complaint in its summary judgment motion, perhaps because it would seem anomalous for government conduct which is invulnerable to judicial review to state a claim on which monetary relief might be granted. While that may well be the case, it is also true that anomalies are not foreign to the law of immigration as it has been developed by the Congress and the Courts. Thus, it should not be entirely surprising that there is explicit statutory authorization for 'a private right of action against consular officers in which civil liability may be imposed. 22 U.S. C.A. § 1199 (Supp.1976) provides that:

> Whenever any consular officer . . is guilty of any willful malfeasance or abuse of power, or of any corrupt conduct in his office, he shall be liable to all persons injured by any such . . malfeasance, abuse, or corrupt con-

duct, for all damages occasioned thereby; and for all such damages, he shall be responsible thereon to the full amount thereof to be sued in the name of the United States for the use of the person injured. . . .

Although this statute has been in force since 1856, 11 Stat. 64, it has seen little use. *See United States to Use of Parravicino v. Brunswick,* 63 App.D.C. 65, 69 F.2d 383 (1934); *American Surety Co. v. Sullivan,* 7 F.2d 605 (2d Cir. 1925). *Cf. American South African Line v. United States,* 57 F.2d 208 (S.D.N.Y. 1932). It clearly imposes a severe burden of proof on the plaintiff, which may account for Mrs. Pena's failure to explicitly invoke it here.

■ Nevertheless, the Court is administering the summary judgment rule as interpreted in this Circuit, *see Heyman v. Commerce & Industry Insurance Co., supra,* and conceivably triable issues of fact concerning the defendant's liability under § 1199 may be lurking in the interstices of the plaintiff's claim. Hence, it would be inappropriate to grant the defendants' motion for summary judgment in regard to plaintiff's claim for damages at this time. Since a claim under the statute must be brought "in the name of the United States for the use of" the plaintiff, however, plaintiff's claims will be dismissed in their entirety 20 days from the entry of this order if she has not moved to amend her complaint within that time to properly assert a damage claim and has by such failure indicated that she lacks a factual basis on which to assert such a claim.

Partial summary judgment is granted to the defendants accordingly with leave to them to apply for a complete dismissal of the claim to damages as indicated by the preceding paragraph hereof.

SO ORDERED.