Carlos ROMERO, Plaintiff,

v.

CONSULATE OF the UNITED STATES, BARRANQUILLA, COLOMBIA, et al., Defendants.

Ines Elvira Navarro de CUELLO, Plaintiff,

v.

CONSULATE OF the UNITED STATES, BARRANQUILLA, COLOMBIA, et. al., Defendants.

Civ.A. Nos. 94–185–A, 94–186–A.

United States District Court, E.D. Virginia, Alexandria Division.

Aug. 12, 1994.

Isidoro Rodriguez C., Law Office of Isidoro Rodriguez, Barranquilla, Colombia, for plaintiffs.

Helen Fahey, U.S. Atty., Rachel Celia Ballow, and Larry Lee Gregg, Asst. U.S. Attys., Alexandria, VA, for defendants.

ELLIS, District Judge.

These separate but essentially similar cases[1] raise the issue, seldom presented in this circuit, whether off-shore aliens[2] have the right of judicial review of a consular officer's decision denying their requests for non-immigrant visas to visit the United States. Plaintiffs Ines Elvira Navarro de Cuello ("Navarro") and Carlos Romero ("Romero") were denied non-immigrant visitor visas for entry to this country by consular officers in Barranquilla, Colombia, on the ground that plaintiffs were suspected of having participated in drug trafficking. Plaintiffs deny any involvement in drugs and sue the United States and various entities of the United States, seeking judicial review of the consular officers' decisions, as well as damages for emotional distress stemming from the government's allegedly "negligent investigation" that implicated plaintiffs in drug trafficking. Because the decision whether to grant or deny non-immigrant visitors visas is in the sole discretion of consular officers and is not subject to judicial review, and because the negligent investigation allegation does not state a claim upon which relief can be granted, plaintiffs' actions must be dismissed with prejudice.

### I.

Romero, a native and citizen of the Republic of Colombia, applied for a non-immigrant visa in March 1992. A United States consular officer in Barranquilla denied Romero's request on the ground that there was reason to believe that Romero was engaged in drug trafficking.[3] The letter informing Romero of the consular officer's decision stated that:

> After a careful investigation, it has been concluded that you were found ineligible to receive a visa for the United States, in July 1989, under Section 212(a)(2)(C) of the Immigration and Nationality Act. This section prohibits the issuance of a visa to anyone:

> "Who the consular or immigration officer knows or has reason to believe is or has been an illicit trafficker of controlled substances; who is or has been a known aider, conspirer, or assister with other in the illegal trafficking or any controlled substance."

> The determination was based on information of a confidential nature, and for that reason it is not possible to divulge it, according to the laws of the United States that protect confidential information. Nevertheless, the Consulate would have the pleasure to consider and reexamine whatever information that you may wish to present on your case after one year from the date of this letter.

> It is unfortunate that it was necessary to make this decision.

Letter of March 6, 1992 from Maria Otero, United States Consul, Barranquilla Colombia, to Carlos Horacio Romero Paez.

---

1. The cases are consolidated here solely for the purpose of disposing of identical motions to dismiss.

2. Plaintiffs are referred to as "off-shore aliens" to distinguish them from aliens located within the United States, for once within the jurisdiction of the United States "[t]he Fifth Amendment, as well as the Fourteenth Amendment, protects every one of these persons from deprivation of life, liberty, or property without due process of law.... Even one whose presence in this country is unlawful, involuntary, or transitory is entitled to that constitutional protection." *Mathews v. Diaz*, 426 U.S. 67, 77, 96 S.Ct. 1883, 1890, 48 L.Ed.2d 478 (1976) (citations omitted).

   Referring to plaintiffs as "off-shore" aliens further distinguishes them from individuals, located either in the United States, or at a United States border, who are entitled to administrative and judicial review in the course of deportation or exclusion proceedings. *See Sale v. Haitian Ctrs. Council, Inc.*, —— U.S. ——, ——————, 113 S.Ct. 2549, 2552–53, 125 L.Ed.2d 128 (1993) ("Aliens residing illegally in the United States are subject to deportation after a formal hearing.... Aliens arriving at the border, or those who are temporarily paroled into the country, are subject to an exclusion hearing ... In either a deportation or exclusion proceeding the alien may seek asylum as a political refugee.").

3. Section 1182 of Title 8 provides, in pertinent part:

   [a]ny alien who the consular or immigration officer knows or has reason to believe is or has been an illicit trafficker in any such controlled substance or is or has been a knowing assister, abettor, conspirator, or colluded with others in the illicit trafficking in any such controlled substances, is excludable.
   8 U.S.C. § 1182(a)(2)(C) (1987 and Supp.1994).

Navarro, also a Colombian citizen and resident, requested a non-immigrant visa to the United States in October 1992. As with Romero, a United States consular officer in Barranquilla, Colombia refused to issue the requested visa on the ground that Navarro was suspected of involvement in drug trafficking.[4] The letter sent to Navarro was essentially similar to the Romero letter and stated, in part, as follows:

> Permit us to inform you that in accordance with the information that we have in our records, you are permanently ineligible to receive a tourist visa under section 212( )(2)(c) of the Immigration and Nationality Act of the United States.

> Section 212(a)(2)(C) establishes that the consular section cannot approve a visa for any person who the consular or immigration officer knows or has reason to believe is or has been an illicit trafficker of controlled substances; who is or has been a knowing collaborator, instigator, conspirator or has been colluding with other persons for the illegal trafficking of said substances.

> According to the information furnished by the Department of State and the information supplied in the interviews you are not eligible to receive a visa. We regret that our response could not be more favorable.

Letter of October 19, 1992, from Maria Otero, United States Consul, Barranquilla Colombia, to Ines Elvira Navarro.

4. *See* n. 3, *supra.* Navarro's 1992 application was in the form of a request for reconsideration of a consular officer's denial of Navarro's requests for non-immigrant visas in 1989 and 1991. These denials, like the 1992 denial, were based on consular officers' suspicions that Navarro had been involved in illegal narcotics trafficking.

5. This power can be inferred from a combination of the Commerce Clause, (U.S. CONST. art. I, § 8, cl. 3), the Naturalization clause (U.S. CONST. art. I, § 8, cl. 4), and the Necessary and Proper Clause (U.S. CONST. art. I, § 8, cl. 18). Courts consider this power too well established to be disputed. *See Fok Yung Yo v. United States*, 185 U.S. 296, 302, 22 S.Ct. 686, 688, 46 L.Ed. 917 (1902) ("The doctrine is firmly established that the power to exclude or expel aliens is vested in the political departments of the Government, to be regulated by treaty or by act of Congress, and

Plaintiffs filed their respective actions in February 1994, naming as defendants the United States, the United States Consulate in Barranquilla, the Attorney General, and the Drug Enforcement Administration. Specifically, plaintiffs assert that consular officers in Barranquilla failed adequately to specify the factual bases for denying plaintiffs' visa applications. Based on this contention, plaintiffs seek discovery of the records and specific facts upon which the denials were purportedly based. Next, plaintiffs assert that the government failed to provide them with an opportunity for administrative review of consular officers' denial of their visa applications. Accordingly, plaintiffs now seek review under both the Immigration and Nationality Act of 1952 (hereafter "INA"), 8 U.S.C. § 1181 *et seq.,* and the Administrative Procedure Act (hereafter "APA"), 5 U.S.C. §§ 701–706 (1946). Finally, plaintiffs seek damages against the Drug Enforcement Administration for infliction of emotional distress stemming from a "negligent investigation." Citing the principle that consular officers' visa determinations are "beyond the province of the Court," the government contends that plaintiffs lack standing to pursue their claims.

## II.

Though no constitutional provision explicitly vests Congress with the power to determine the admission of aliens into the United States, there is no doubt that this power exists.[5] And courts have broadly con-

to be executed by the executive authority according to such regulations, except so far as the judicial department is authorized by treaty or by statute, or is required by the Constitution, to intervene."); *Harisiades v. Shaughnessy*, 342 U.S. 580, 588–89, 72 S.Ct. 512, 519, 96 L.Ed. 586 (1952) ("[A]ny policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations, the war power, and the maintenance of a republican form of government. Such matters are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference.") (footnote omitted); *Kleindienst v. Mandel*, 408 U.S. 753, 766, 92 S.Ct. 2576, 2583, 33 L.Ed.2d 683 (1972) (quoting *Lem Moon Sing v. United States*, 158 U.S. 538, 547, 15 S.Ct. 967, 970, 39 L.Ed. 1082 (1895)) ("The power of Congress to exclude aliens altogether from the United States, or to prescribe the terms and conditions upon which

strued this Congressional power, finding that it extends not only to which classes of aliens may enter the United States, but also to the terms and conditions of their entry. *Kleindienst v. Mandel,* 408 U.S. 753, 766, 92 S.Ct. 2576, 2583, 33 L.Ed.2d 683 (1972); *see Anetekhai v. INS,* 876 F.2d 1218, 1221 (5th Cir. 1989); *Li Hing of Hong Kong, Inc. v. Levin,* 800 F.2d 970, 971 (9th Cir.1986). Exercising this power, Congress, in the INA, has given United States consular officers exclusive authority over the issuance of non-immigrant visas for visits to the United States. 8 U.S.C. § 1201 (1987 and Supp.1994), *see* 8 U.S.C. § 1101(a)(9). And both prior to and since the INA's enactment, courts have consistently held that a consular officer's decision to grant or deny a visa is not subject to judicial or administrative review.[6]

Importantly, the doctrine of nonreviewability of consular officers' visa determinations is essentially without exception. Thus, even where a consular judgment rests on allegedly erroneous information, courts generally will not intervene. *See Loza–Bedoya v. Immigration & Naturalization Service,* 410 F.2d 343, 346–47 (9th Cir.1969); *see also Garcia v. Baker,* 765 F.Supp. 426, 428 (N.D.Ill.1990). Likewise, the fact that a consular officer may have erroneously interpreted and applied the INA, *see Grullon v. Kissinger,* 417 F.Supp. 337, 339–340 (E.D.N.Y.1976), *aff'd* 559 F.2d 1203 (2d Cir.1977), or indeed the fact that a consular officer's decision was not authorized by the INA, *see Centeno v. Shultz,* 817 F.2d 1212, 1213 (5th Cir.1987), *cert. denied,* 484 U.S. 1005, 108 S.Ct. 696, 98 L.Ed.2d 648 (1988), does not entitle visa applicants to relief. Finally, visa applicants like plaintiffs cannot assert cognizable claims based on the contention that the State Department and Attorney General, in denying an applicant's visa request, failed to follow their own regulations. *See Burrafato v. United States Dep't of State,* 523 F.2d 554, 557 (2d Cir. 1975), *cert. denied,* 424 U.S. 910, 96 S.Ct. 1105, 47 L.Ed.2d 313 (1976). In sum:

> whether the consul acted reasonably or unreasonably, is not for [the courts] to determine. Unjustifiable refusal to vise a passport may be ground for diplomatic complaint by the nation whose subject has been discriminated against.... It is beyond the jurisdiction of this court.

*Id.* at 556 (quoting *United States ex rel. London v. Phelps,* 22 F.2d 288, 290 (2d Cir. 1927), *cert. denied,* 276 U.S. 630, 48 S.Ct. 324, 72 L.Ed. 741 (1928)).

Faced with this daunting array of authority, plaintiffs attempt to carve out an exception to the principle of non-reviewability by arguing that while federal courts may not have jurisdiction to review a consular

---

they may come into this country, and to have its declared policy enforced exclusively through executive officers, without judicial intervention, is settled by our previous adjudications."); *Mathews v. Diaz,* 426 U.S. 67, 81, 96 S.Ct. 1883, 1892, 48 L.Ed.2d 478 (1976) ("For reasons long recognized as valid, the responsibility for regulating the relationship between the United States and our alien visitors has been committed to the political branches of the Federal Government.").

**6.** *See Centeno v. Shultz,* 817 F.2d 1212 (5th Cir. 1987), *cert. denied,* 484 U.S. 1005, 108 S.Ct. 696, 98 L.Ed.2d 648 (1988) (decision of consular officers to deny applicant's visa request not reviewable by a federal court); *Ventura–Escamilla v. Immigration & Naturalization Service,* 647 F.2d 28 (9th Cir.1981) (neither an immigration judge, the Board of Immigration Appeals, nor a court of appeals has jurisdiction to review decision of American consul denying alien's visa application); *Braude v. Wirtz,* 350 F.2d 702, 706 (9th Cir.1965) (noting, in denying request of Mexican alien to review consular visa determination, that

"we are constrained to hold that no right of judicial review exists on the part of these nonresident aliens of determinations made by the executive branch acting pursuant to Congressional directive.").

Indeed, even before the passage of the Immigration and Nationality Act of 1952, 8 U.S.C. § 1181 *et seq.,* courts recognized that judicial review over decisions regarding the admission of aliens was extremely limited. *See United States ex rel. Ulrich v. Kellogg,* 30 F.2d 984 (D.C.Cir.), *cert. denied sub nom. United States ex rel. Ulrich v. Stimson,* 279 U.S. 868, 49 S.Ct. 482, 73 L.Ed. 1005 (1929) ("We are not able to find any provision of the immigration laws which provides for an official review of the action of consular officers ... by a cabinet officer or other authority."); *see, e.g., Oceanic Steam Navigation Co. v. Stranahan,* 214 U.S. 320, 339, 29 S.Ct. 671, 676, 53 L.Ed. 1013 (1909) ("... over no conceivable subject is the legislative power of Congress more complete than it is over" the admission of aliens).

officer's substantive decision, courts may nonetheless review an officer's decision for alleged procedural irregularities. Thus, plaintiffs contend that consular officers must specify the factual predicates for their visa determinations, and assert that consular officers in Barranquilla failed to do so. Plaintiffs' argument is meritless; no such exception to the doctrine of consular nonreviewability exists. It is true that a visa may be refused "only upon a ground specifically set out in the law or regulations thereunder," and that the factual predicate for such a denial must be based on "a determination based upon facts or circumstances which would lead a reasonable person to conclude that the applicant is ineligible to receive a visa as provided in the INA and as implemented by the regulations." 22 C.F.R. § 40.6 (1993). But offshore aliens have no right to judicial enforcement of these provisions, or to judicial review of administrative compliance with them. Further, neither the INA, relevant regulations, nor applicable case law [7] require a consular officer to disclose the particular facts relied on in denying a visa request. Rather, consular officers are merely required to inform the unsuccessful applicant "of the provision of law or implementing regulation on which the refusal is based," and of any statutory provisions under which administrative relief may be available. 22 C.F.R. § 42.81(b) (1993). These requirements were met here; consular officers in Barranquilla clearly indicated to Romero and Navarro that their visa applications were denied based on the officers' suspicions that plaintiffs were involved in narcotics trafficking, making them excludable aliens pursuant to 8 U.S.C. § 1182(a)(2)(C). In any event, as offshore aliens, plaintiffs have no right to judicial review of the consular officers' decisions, nor are they entitled to discovery of the documents and particular facts upon which consular officers relied in denying their visa applications.[8]

Also meritless is plaintiffs' contention that they are entitled to an administrative review of the consular officers' decisions pursuant to 22 C.F.R. § 41.121. Their reliance on this regulation is simply misplaced. Section 41.121 outlines the internal procedures that consular officers are required to follow

7. Plaintiffs' status as offshore aliens precludes their reliance on *Kleindienst v. Mandel*, 408 U.S. 753, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972). That case, which involved the denial of a non-immigrant visitor's visa to a Belgian journalist and academic based on his purported violations of a previously issued non-immigrant visitor's visa, was brought by certain American academics who sued, on First Amendment grounds, "to enforce their rights individually and as members of the American public" to "communicate" with Mandel. *Id.* at 762, 92 S.Ct. at 2581. Indeed, the plaintiffs-appellees in *Mandel* conceded that Mandel himself, as an unadmitted offshore alien, "had no constitutional right of entry to this country as a nonimmigrant or otherwise." *Id.* Here, plaintiffs are unadmitted offshore aliens who, like Mandel himself and unlike plaintiffs-appellees in *Mandel*, have no standing to challenge the denial of their entry.

Further, *Mandel* did not involve a challenge to a consular officer's visa determination, but dealt instead with the extent of the Attorney General's delegated authority, under a statute authorizing a waiver of exclusion, not to waive the statutory exclusion of a particular alien. And while federal courts may have "minimal review" over the narrow issue of whether a facially legitimate and bona fide reason exists for the denial of a waiver of exclusion, this cannot be construed as implying a right to seek review of a consular officer's initial visa determination. *See Centeno,* 817 F.2d

at 1213 (indicating that where visa applicant was denied visa under statute that did not provide for a waiver, the denial of the visa was not reviewable in federal court). Finally, consular officers in Barranquilla, in concluding that plaintiffs were excludable aliens pursuant to 8 U.S.C. § 1182(a)(2)(C), in fact gave a "facially legitimate and bona fide" reason for denying plaintiffs' visa applications.

8. Plaintiffs argue that this court may request the records relied on by consular officers in Barranquilla pursuant to 8 U.S.C. § 1202(f), which provides that such records may be made available to a court when the Secretary of State certifies that the information contained in the records "is needed by the court in the interest of the ends of justice in a case pending before the court." 8 U.S.C. § 1202(f) (1987). Plaintiffs' reliance on § 1202 is misplaced, as § 1202 does not override the doctrine of consular nonreviewability and confers neither standing on plaintiffs to assert their claims nor jurisdiction on this Court to entertain their claims. *See, e.g., Medina–Hincapie v. Department of State,* 700 F.2d 737, 743–44 (D.C.Cir.1983) (information falling under § 1202 that pertains to the denial of a visa application properly withheld from disclosure, as disclosure could reveal "the thought processes of those who rule[d] on the application"); *DeLaurentiis v. Haig,* 686 F.2d 192, 193 (3d Cir.1982) (same).

after the denial of an applicant's visa request.[9] Nothing in the regulation provides an offshore visa applicant with the right to seek administrative review of the consular officer's factual determination.[10]

■ Nor can plaintiffs rescue their claims from the doctrine of consular nonreviewability by citing the APA. The APA provides no implied grant of subject matter jurisdiction to review consular decisions. *Cf. Califano v. Sanders,* 430 U.S. 99, 105, 97 S.Ct. 980, 984, 51 L.Ed.2d 192 (1977). And in general, disputes regarding an alien's right to enter and remain in the United States are governed by the special judicial review provisions of the INA, not the APA. *See, e.g., Marcello v. Bonds,* 349 U.S. 302, 310, 75 S.Ct. 757, 761, 99 L.Ed. 1107 (1955) (hearing provisions of APA, with certain enumerated exceptions, inapplicable to deportation proceedings); *Heikkila v. Barber,* 345 U.S. 229, 235–37, 73 S.Ct. 603, 606–07, 97 L.Ed. 972 (1953). Moreover, reading the APA to include the right to seek administrative review of consu-

lar decisions violates the doctrine of consular nonreviewability and "would be inconsistent" with the language and spirit of both the INA and APA. *Haitian Refugee Ctr. v. Baker,* 953 F.2d 1498, 1507 (11th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 1245, 117 L.Ed.2d 477 (1992).[11]

In sum, exercising jurisdiction over the claims of these aliens would violate the long-standing doctrine that a consular officer's visa determination is nonreviewable. Although the doctrine of consular non-reviewability is not without its critics,[12] it is well-grounded in established principles of national sovereignty and in sensible public policy.[13] Were the rule to be otherwise, federal courts would be inundated with claims of disappointed and disgruntled off-shore aliens seeking review of consular officers' denials of their requests for nonimmigrant visitor's visas. The doctrine of consular nonreviewability has been well-established for over seventy years, and the facts of this case warrant no departure from it.

9. Federal regulations require a consular officer to specify the reasons for denying a visa application on the application form, which is then filed in the consular office. 22 C.F.R. § 41.121(b) (1993). If the consular officer's initial denial of a visa request cannot be overcome by the submission of additional information by the applicant, then the file is reviewed by the principal consular officer or his designee. 22 C.F.R. § 41.121(c). If this officer concurs with the initial denial, then the regulations imply that this is the end of the matter administratively, and the result cannot be judicially reviewed at the request of the unsuccessful offshore alien. In the event the principal consular officer or his designee does not concur in the denial, then the officer either (1) refers the case to the State Department for an advisory opinion or (2) assumes responsibility for the case by reversing the refusal. *Id.*

10. Indeed, consular officers' factual determinations are shielded from State Department review, for while the State Department may request that a consular officer in a particular case submit a report if a visa has been refused and may thereafter issue an advisory opinion based on the submission, 22 C.F.R. § 41.121(d), such advisory opinions are binding only to the extent that they involve the Department's interpretation of law, "as distinguished from the application of law to the facts." *Id.*

11. In *Haitian Refugee Ctr.,* the Eleventh Circuit concluded that the INA precluded Haitian refu-

gees who had been interdicted on the high seas from seeking judicial review under the APA, as the INA provided no mechanisms through which aliens who had not yet reached the borders of the United States could seek review of any kind. *Haitian Refugee Ctr.,* 953 F.2d at 1505. Like the aliens in *Haitian Refugee Ctr.,* plaintiffs here are outside the borders of the United States, and thus not entitled to take advantage of the review mechanisms in the INA and APA for asylum and withholding of deportation claims.

12. *See* Henry Hart, *The Power of Congress to Limit the Jurisdiction of Federal Courts: An Exercise in Dialectic,* 66 Harv.L.Rev. 1362, 1395 (1953) (referring to the lack of review of consular decisions as "brutal" and a "trivializ[ation]" of the great guarantees of due process"); Rosenfield, *Consular Non–Reviewability: A Case Study in Administrative Absolutism,* 41 Amer. Bar. Assoc. J. 1109, 1110 (1955) (calling non-reviewability of consular decisions "an astonishing anomaly in American Jurisprudence").

13. *See United States ex rel. Knauff v. Shaughnessy,* 338 U.S. 537, 542, 70 S.Ct. 309, 312, 94 L.Ed. 317 (1950) ("[w]e wish to point out that an alien who seeks admission to this country may not do so under any claim of right. Admission of aliens to the United States is a privilege granted by the sovereign United States Government. Such privilege is granted to an alien only upon such terms as the United States shall prescribe.").

An appropriate Order shall issue.[14]

**14.** The Order will also dismiss plaintiffs' FTCA claims for "serious emotional distress and depression" allegedly stemming from a "negligent and incorrect" investigation by the DEA."

The government argues that plaintiffs' claims are barred under the doctrine of sovereign immunity, as the FTCA generally does not apply to claims arising from actions that occurred in another country. *See* 28 U.S.C. § 2680(k). Plaintiffs counter that Congress has enacted an exception to this general rule at 21 U.S.C. § 904, which provides that the Attorney General is authorized to pay tort claims in the manner authorized by the FTCA when such claims arise in a foreign country in connection with the operations of the DEA abroad. 21 U.S.C. § 904. It is doubtful whether § 904 provides an independent ground for asserting jurisdiction and pursuing judicial relief; the section does not make any explicit provision for judicial review, and courts are hesitant to imply any waiver of sovereign immunity. *See United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1975). Next, plaintiffs have failed to establish a colorable "headquarters" claim, as they have failed to show that any acts or omissions of United States employees at DEA offices located within the United States in general, or DEA headquarters in Arlington, Virginia in particular, were the proximate cause of any emotional distress caused by the denial of their visa requests by consular officers in Colombia. *See Eaglin v. United States Dep't of Army*, 794 F.2d 981, 983 (5th Cir.1986). Finally, even under liberal pleading rules, it is apparent that plaintiffs have failed to allege proper claims for "emotional distress" under the FTCA.