Roberto SAAVEDRA BRUNO,
et al., Plaintiffs,

v.

The Honorable Madeleine K. ALBRIGHT,
et al., Defendants.

No. Civ. A. 98–0252(JR).

United States District Court,
District of Columbia.

Sept. 1, 1998.

Jonathan P. Graham, Max Stier, Williams & Connolly, Washington, DC, for Plaintiffs.

Meredith Manning, Assistant U.S. Attorney, Alison Marie Igoe, U.S. Department of Justice, Washington, DC, for Defendants.

### MEMORANDUM

ROBERTSON, District Judge.

Plaintiff Saavedra is a Bolivian businessman and founder of Musicanga, a Miami record label. He held a B–1/B–2 visa (temporary visa for business and pleasure), issued on May 15, 1992, that was to expire on May 15, 2002. On May 17, 1995, he received an L–1 visa (executive, managerial and specialized knowledge personnel) in order to direct Musicanga. The L–1 visa was to expire in May 1996. Saavedra left the United States to reapply for the L–1 visa, as he was required to do. He went to the American consulate in Panama for that purpose.

There he was told that he had been classified as a suspected drug trafficker and that his request for re-issuance of the L–1 visa was denied under the applicable section of the Immigration & Naturalization Act. *See* 8 U.S.C. § 1182(a)(2)(C). He returned to La Paz, Bolivia, in June 1996, and there the American Consulate revoked his B–1/B–2 visa.

Saavedra and the other plaintiffs (Musicanga and an officer of Musicanga) seek review of the consular decisions to decline re-issuance of his L–1 visa (in Panama) and to revoke his B–1/B–2 visa (in Bolivia). They also seek an order directing the Secretary of State to forward his request for an entry waiver to the Attorney General under 8 U.S.C. § 1182(d)(3). Defendant moves to dismiss, arguing, *inter alia*, that the first two claims are barred doctrine of consular nonreviewability and that the third claim is moot. For the reasons stated herein, defendant's motion will be granted.

### Analysis

■ The doctrine of consular nonreviewability is not easily fathomed, and its survival in light of the presumption of reviewability created by the Administrative Procedure Act may be in some doubt. *See, e.g., Pena v. Kissinger,* 409 F.Supp. 1182 (S.D.N.Y.1976). Nonetheless, I decline in this case to abrogate the long-standing principle that decisions by consular officials abroad are not reviewable by a court.

■ Among the "ancient principles of the international law of nation-states" is that the "power to exclude aliens is 'inherent in sovereignty, necessary for maintaining normal international relations and defending the country against foreign encroachments and dangers—a power to be exercised exclusively by the political branches of government ....'" *Kleindienst v. Mandel,* 408 U.S. 753, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972) (quoting *The Chinese Exclusion Case,* 130 U.S. 581, 609, 9 S.Ct. 623, 32 L.Ed. 1068 (1889)). Thus, "[t]he power of Congress to exclude aliens altogether from the United States, or

to prescribe the terms and conditions upon which they may come to this country, and to have its declared policy in that regard enforced exclusively through executive officers, without judicial intervention, is settled ...." *Lem Moon Sing v. United States,* 158 U.S. 538, 547, 15 S.Ct. 967, 39 L.Ed. 1082 (1895); *see also Mandel,* 408 U.S. at 766 n. 6, 92 S.Ct. 2576 (citing modern cases); *Fiallo v. Bell,* 430 U.S. 787, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977). *Lem Moon Sing* addressed a now defunct immigration act in which Congress expressly precluded review of consular decisions, but the judge-made doctrine of consular nonreviewability arose from that case and its progeny and has since been widely adopted and recognized. *See, e.g., Perales v. Casillas,* 903 F.2d 1043 (5th Cir.1990); *Li Hing of Hong Kong v. Levin,* 800 F.2d 970 (9th Cir.1986); *Rivera de Gomez v. Kissinger,* 534 F.2d 518 (2d Cir.1976) (per curiam) (adopting the reasoning of *Pena v. Kissinger,* 409 F.Supp. 1182 (S.D.N.Y.1976)); *Romero v. Consulate of the United States, Barranquilla, Colombia,* 860 F.Supp. 319 (E.D.Va. 1994).[1]

■ The APA's presumption that agency action is reviewable may render the doctrine of consular nonreviewability anomalous, *see Pena,* 409 F.Supp. at 1186, but the Supreme Court's modern acceptance of the doctrine in *Mandel* and *Fiallo* suggests that reports of the doctrine's death are greatly exaggerated. The argument for application of the APA to consular decisions urges that visa decisions are not committed to agency discretion by law and that review of consular decisions is not precluded by statute. *See* 5 U.S.C. § 701(a)(1)-(2). The APA does not provide an independent grant of jurisdiction, however, *see Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977); *cf. Bains v. Schiltgen,* No. C97–2573 (N.D. Cal., April 21, 1998), *available in* Westlaw, 1998 WL 204977 (denying judicial review under the APA of an adjustment of status petition made by the INS). And 8 U.S.C. § 1329, which until 1996 provided that "the district courts ... shall have jurisdiction of all

---

1. In an unpublished disposition, the Seventh Circuit also recognized and adopted the doctrine of consular nonreviewability. *See Nsiah v. Perryman,* 1997 WL 661184, 129 F.3d 119 (7th Cir. 1997).

causes, civil and criminal, arising under any of the provisions of this subchapter" of the INA, was amended in that year by the Illegal Immigration Reform and Immigrant Responsibility Act to read, "Nothing in this section shall be construed as providing jurisdiction for suits against the United States or its agencies or officers," 8 U.S.C. § 1329 (1996 Supp.).

■ Neither of the two D.C. Circuit cases upon which plaintiffs heavily rely, *Abourezk v. Reagan*, 785 F.2d 1043 (D.C.Cir.1986), and its follow-up case, *City of New York v. Baker*, 878 F.2d 507 (D.C.Cir.1989), signals the end of the consular nonreviewability doctrine. In *Abourezk*, plaintiffs challenged determinations to deny them visas under 8 U.S.C. § 1182(a)(27).[2] Under then-applicable State Department policy, when an alien presented himself to a consular official abroad and was suspected of being ineligible under this section, the consular official obtained an advisory opinion from the State Department, 22 C.F.R. § 41.130(c) (1985). The determination of the alien's status was thus made, not by the consular official, but by the State Department. The court explicitly distinguished that case, in which judicial review is indeed available, from one seeking directly to review decisions of consular officials, in which judicial review is not available. *See Abourezk*, 785 F.2d at 1051 n. 6 (citing *Castaneda-Gonzalez v. Immigration & Naturalization Service*, 564 F.2d 417, 428 n. 25 (D.C.Cir. 1977)); *see also Jaimez–Revolla v. Bell*, 598 F.2d 243 (D.C.Cir.1979) (per curiam) (reviewing Attorney General's decision to deny immigrant's application for readmission to the U.S.). Moreover, the court in *Baker*, deciding the *Abourezk* case after remand, held that an injunction could not issue against a consular official because "[t]his circuit has recognized, as has every other circuit to consider the issue, that the courts are without jurisdiction to displace the consular function

in the issuance of visas." *Baker*, 878 F.2d at 512.[3] Accordingly, the decision by the consulate in Panama to decline to reissue plaintiff Saavedra's L–1 visa is not reviewable by this court.

There is no compelling reason to treat the revocation decision of the consulate in La Paz differently from the re-issuance decision of the consulate in Panama. One Ninth Circuit case, *Wong v. Department of State*, 789 F.2d 1380 (9th Cir.1986), did review a consular official's decision to revoke an alien's visa. The Ninth Circuit has itself distinguished that decision, however, in part because "the consular official's basis for revocation was not one of the permissible grounds enunciated by the applicable regulations." *Li Hing*, 800 F.2d at 971. In other words, there is a difference between visa decisions made outside a consular officer's authority, *see generally Mandel, supra*, and consular decisions made within the officer's discretionary power. *See Lem Moon Sing*, 158 U.S. at 546, 15 S.Ct. 967 (denying review of consular officers' decisions "so long as such officers acted within the authority conferred upon them by congress").

■ Plaintiffs' third claim—their demand for action on Saavedra's petition for waiver under § 1182(d)(3)—is moot: the Attorney General acted officially on that request after this suit was filed. *See* Def. Ex. C. Plaintiffs' argument that the challenged action is capable of repetition and yet evades review, *see United States v. W.T. Grant*, 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1953), is unavailing. They do not challenge a policy or regulation of the State Department, and the individualized decision in plaintiffs' case is not capable of repetition. Plaintiffs may have a cause of action for review of the Attorney General's decision, *see Centeno v. Shultz*, 817 F.2d 1212 (5th Cir.1987); *Jaimez–Revolla, supra*, but

---

**2.** This provision of the predecessor statute to the current § 1182 denied admission to "[a]liens who the consular officer or the Attorney General knows or has reason to believe seek to enter the United States solely, principally, or incidentally to engage in activities which would be prejudicial to the public interest, or endanger the welfare, safety, or security of the United States." § 1182(a)(27) (1986).

**3.** For this proposition, the *Baker* court cited cases in other jurisdictions—*Centeno v. Shultz*, 817 F.2d 1212, 1213–14 (5th Cir.1987); *Li Hing, supra*—that expressly adopted the doctrine of consular nonreviewability.

they have not advanced that claim in this suit.